ODINETZ v. BUDDS.

1. ARREST—WITHOUT WARRANT—FELONY—MISDEMEANOR.

   Under statute defining power of a peace officer to make an arrest without a warrant, he may arrest without a warrant any person for selling alcoholic liquor without a license to do so since such conduct is declared a felony or if a person in the officer's presence operated a restaurant without a license in violation of city ordinance, a misdemeanor (3 Comp. Laws 1929, § 17149; Act No. 8, § 50, Pub. Acts 1933 [Ex. Sess.]).

2. APPEAL AND ERROR — RECORD — INSTRUCTIONS — FAIR TRIAL — WEIGHT OF EVIDENCE.

   In an action for false arrest and imprisonment when it appears from the record that the trial court's instructions were proper, the trial fair, well conducted and impartial and it does not appear that the verdict was against the overwhelming weight of the evidence, it will not be set aside.

3. FALSE IMPRISONMENT—GOOD FAITH OF OFFICER.

   A police officer who acts in good faith in the line of duty, even though overzealous in its discharge, should be protected in an action against him for false arrest and imprisonment.

4. SAME—DAMAGES—PEACE OFFICERS.

   If possible, any doubt should be resolved in favor of an honest discharge of duty by peace officers and courts should not place them in fear of responding in damages for the lawful and proper discharge of that duty.

5. ARREST—WITHOUT WARRANT—GOOD FAITH.

   An arrest without a warrant is always made at the peril of the officer and he must realize that his conduct is subject to review in court and that his conduct is dependent upon the utmost good faith on his part (3 Comp. Laws 1929, § 17149).

6. SAME—CHARACTER OF SUSPECTED PERSON.

   In making an arrest a peace officer may consider the character and manner of life of the suspected person.

7. FALSE IMPRISÓNMENT—RECORD.

In actions against city police officers for false arrest and imprisonment, testimony in record sustains charge that defendants exceeded their authority in arresting and imprisoning plaintiff on occasions recited in declarations (3 Comp. Laws 1929, § 17149).

8. SAME—REMITTITURS—DAMAGES.

In actions against police officers for false arrest and imprisonment verdicts, after remittiturs, in the amounts of $3,000 and $2,000 *held,* not excessive (3 Comp. Laws 1929, § 17149).

9. SAME—VERDICTS—PREJUDICE.

In actions against police officers for false arrest and imprisonment, claimed errors and prejudicial statements *held,* not to afford justification for setting aside judgments entered on'verdicts of jury.

Appeal from Wayne; Toms (Robert M.), J. Submitted April 11, 1946. (Docket Nos. 60, 61, Calendar Nos. 43,250, 43,251.) Decided September 11, 1946. Rehearing denied October 18, 1946.

Separate actions of case by Mike Odinetz against Charles Budds, John Sikorski and George Spiegel and by plaintiff against Charles Budds, John Sikorski and Arthur Chojnacki for false imprisonment. Directed verdict for defendant Spiegel. Judgments for defendant Sikorski notwithstanding verdicts for plaintiff. Verdicts and judgments for plaintiff against defendants Budds and Chojnacki. Defendants appeal. Affirmed.

*Davidow & Davidow,* for plaintiff.

*Stanley S. Draganski* and *Con S. Gryczka,* for defendants.

BUSHNELL, J. Plaintiff Mike Odinetz has resided in the city of Hamtramck since 1921. During that year he purchased a building located at 3080–3084 Miller avenue, where he opened a restaurant. In

1924 he made some alterations in the building and thereafter continued to operate a restaurant downstairs and a rooming house upstairs. Sometime prior to 1940 he sold the 3084 Miller avenue property and later repurchased it. In the latter part of 1940 Odinetz resumed occupancy of all of the Miller avenue property.

Early in 1941 he was arrested and charged with a violation of the State liquor law, on which charge he was found guilty and fined $300. Subsequently proceedings were instituted in the Wayne circuit court to have Odinetz's premises padlocked, on the ground that he had permitted the operation of a public nuisance therein. The circuit court, instead of ordering the premises padlocked, permitted Odinetz to post a bond in the sum of $1,000, conditioned upon the discontinuance of the illegal sale of liquor.

Prior to this hearing and after the former conviction, Odinetz was arrested on September 26, 1941, and charged with operating a restaurant without a license. He was kept in jail overnight and released the next morning. It is his claim that on this occasion the arresting officers, defendants Budds and Chojnacki took $160 in money from his premises, which was not returned. Odinetz was subsequently acquitted of the charge of operating a restaurant without a license.

The record shows that thereafter during the remainder of 1941 and throughout 1942, Odinetz was arrested at frequent intervals and generally released without being charged with any violation of city ordinances or State statutes. The examination of the testimony forces the conclusion that the arresting officers were continually raiding Odinetz's place of business. They frequently arrested him and his patrons, without the issuance of criminal

warrants, in their desire to secure evidence of violations of the State liquor law. After such arrests, when warrants were sought and denied, those arrested, including Odinetz, were released. On other occasions the arrests were sought to be justified by charging him with violations of the city ordinance, viz., operating a restaurant without a license, on which charge he was never convicted.

It should be noted that he was licensed from year to year prior to 1941 by the city as a restaurant keeper, but action on his application for renewal of his restaurant license was unexplainably deferred thereafter.

On November 12, 1941, Odinetz instituted an action for false arrest and imprisonment against John Sikorski, George Spiegel, and Charles Budds. Sikorski was then chief of police of Hamtramck, Spiegel was an officer of the Hamtramck police department, in charge of investigation of license violations and miscellaneous complaints, and Budds, was a member of the police force. The action against Sikorski was dismissed on motion, a verdict was directed in favor of Spiegel, and the jury rendered a verdict of $7,000 against Budds.

More than a year after Odinetz instituted the Spiegel, Sikorski and Budds action, he began another action on December 16, 1942, against Sikorski, Budds and Chojnacki, also for false arrest and imprisonment. This second action was dismissed on motion *non obstante veredicto* as to Sikorski, and the jury returned a verdict in plaintiff's favor against Budds and Chojnacki in the sum of $5,000. The two cases had been consolidated for trial and separate motions for new trials were filed by the respective defendants. Odinetz filed a remittitur in the first case of $4,000, and in the second case, of $3,000, and asked that the judgments be entered in

the sums of $3,000 and $2,000, respectively. Upon the filing of the remittiturs the circuit court denied the motions for new trials. On appeal from the judgments entered after the remittiturs, the cases were submitted to this court upon a lengthy record and extensive briefs. The questions raised by appellants may be summarized as follows:

1. Was Odinetz falsely arrested and imprisoned as charged in his several declarations?

2. Were appellants legally justified in arresting Odinetz on the several occasions in question without a warrant?

3. Was the verdict of the jury against the great weight of the evidence, contrary to the law and the charge of the court?

4. Did Odinetz prove any damages?

5. Did he substantiate his declarations by a preponderance of the evidence, and were the verdicts based on evidence rather than on bias, passion and prejudice?

6. Was the amount of damages excessive, and should the court have approved the remittiturs in question?

7. Did the trial court err in denying the motions for directed verdicts and for new trials, and did counsel for plaintiff commit reversible error by injecting unfavorable and prejudicial remarks against the city of Hamtramck?

At the trial it was conceded that on the occasions in question Odinetz was arrested and imprisoned without a warrant.

The power of a police officer to arrest without a warrant is defined by statute. See 3 Comp. Laws 1929, § 17149 (Stat. Ann. § 28.874), and 1 Gillespie, Michigan Criminal Law & Procedure, § 157. Under the provisions of section 50 of the liquor law, Act No. 8, Pub. Acts 1933 (Ex. Sess.) (Comp. Laws

Supp. 1940, § 9209–65, Stat. Ann. § 18.1021), any person selling alcoholic liquor without first obtaining a license shall be guilty of a felony. Therefore, defendants could have arrested Odinetz without a warrant if they had reasonable cause to believe that he had committed a felony, or if a misdemeanor had been committed in their presence, viz., operating a restaurant without a license. *Pinkerton* v. *Verberg,* 78 Mich. 573 (7 L. R. A. 507, 18 Am. St. Rep. 473). The jury's problem was twofold, whether a felony had been committed and whether the defendants could reasonably have believed it to have been committed; also, whether a misdemeanor had been committed in the presence of the arresting officers. The jury found for the plaintiff on both of these points. The question then arises whether the evidence justified the finding of the jury.

In *Tyler* v. *Wright,* 171 Mich. 579, the court held when it appears from the record that the trial court's instructions were proper, the trial was fair, well conducted, and impartial, and it does not appear the verdict was against the overwhelming weight of the evidence, it will not be set aside. See, also, *Lignell* v. *Bruhns,* 211 Mich. 346; *Sweeney* v. *Adam Groth Co.,* 269 Mich. 436; and *McConville* v. *Remington Rand, Inc.,* 278 Mich. 333.

Odinetz is admittedly an individual who has had a questionable past and his place of business was under the constant surveillance of the police. However, the detention of the operator of such a place of business is difficult to justify, especially one who had been a resident of Hamtramck for more than 20 years. It would be presumed that, on the misdemeanor charge of operating a restaurant without a license, it would have been sufficient to follow the general practice and issue a summons to require Odinetz to appear in court. On the other hand, a

police officer who acts in good faith in the line of duty should be protected even though overzealous in its discharge. Odinetz had previously been convicted of violating the State liquor law, and there is no doubt that he had no license to operate a restaurant where liquor was sold for consumption on the premises. Shortly after that arrest he was placed on bond to require him to comply with the law. Based on Odinetz's history and record alone, defendants' actions might seem to be justified. If possible, any doubt should be resolved in favor of an honest discharge of duty by peace officers, and the courts should not place them in fear of responding in damages for the lawful and proper discharge of that duty. However, as said in *People* v. *Ward,* 226 Mich. 45, 51:

"An arrest without a warrant is always made at the peril of the officer. He must realize that his conduct is subject to review in court and that his justification is dependent upon the utmost good faith on his part. That he may consider the character and manner of life of the suspected person goes without saying. While 'All men are created equal' in the eye of the law, the former life and conduct of an individual, his reputation in the community in which he lives, is a potent safeguard to him when suspected of or tried for a criminal offense. Frequently, on a trial, it tips the scales in favor of an acquittal."

The testimony in this record sustains the charge that defendants exceeded their authority in arresting and imprisoning Odinetz on the occasions recited in the two declarations. We adhere to the principle stated by Mr. Justice CAMPBELL in *Malcolmson* v. *Scott,* 56 Mich. 459, 464:

"The law places private liberty at a much higher value than official favors; and violations of law by those who are appointed to protect instead of de-

stroy private security, deserve no favor. Fundamental rules of constitutional immunity cannot be relaxed.''

The amount of the verdict as remitted was not excessive. The record has been carefully examined as to the claimed errors and prejudicial statements and we find no justification for setting aside the judgments entered upon the verdicts of the jury.

The judgments are affirmed, with costs to appellee.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. STARR, J., took no part in the decision of this case.