JOSLIN v 14TH DISTRICT JUDGE

(PEOPLE v JOSLIN)

(PEOPLE v CHRISTANTE)

Opinion of the Court

1. Courts—Orders—Opinions—Municipal Ordinances—Circuit Courts—District Courts.

A court speaks through its orders, not its opinions, therefore where a circuit court judge had written an opinion upholding the validity of a municipal ordinance but had not yet issued his order of declaratory judgment to that effect, there was no circuit court order extant that could bind a district judge when ruling as to the validity of the ordinance.

2. Municipal Corporations—Municipal Police—State Laws—Ordinances—Municipal Concerns—Constitutional Law—Statutes.

Municipal police are authorized to enforce state law and the power of a city to enact ordinances relating to its municipal concerns, property and government, is subject to the constitution and the law; therefore, to the extent that a provision in an Ypsilanti municipal ordinance limits the authority of its city police to enforce state law, it is void (Const 1963, art 7, § 22, MCLA 764.15; MSA 28.874, Ypsilanti Ordinance, No. 437).

3. Drugs and Narcotics—Marijuana—Criminal Sanctions—Legislative Reexamination.

The time is ripe for the Legislature to reexamine the issue of whether or not it is appropriate to have criminal sanctions punishing possession by adults of small amounts of marijuana.

Concurrence by T. M. Burns, J.

4. Drugs and Narcotics—Substance Abuse—Criminal Justice System—Marijuana—Possession of Marijuana.

*It is time to remove at least some, if not all, substance abuse*

References for Points in Headnotes

[1] 20 Am Jur 2d, Courts §§ 70–71.

[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 193, 386–387.

[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.
What constitutes "possession" of a narcotic drug proscribed by § 2 of the Uniform Narcotic Drug Act. 91 ALR2d 810.

[4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.

*problems from the criminal justice arena; the use and posses-
sion of marijuana, for example, is a medical, social, political
and moral problem and should not be a criminal problem and
the waste of time, money, and other resources of the criminal
justice system on enforcement of marijuana laws can no longer
be justified.*

Appeal from Washtenaw, Patrick J. Conlin, J. Submitted February 3, 1977, at Lansing. (Docket No. 27157.) Decided June 6, 1977.

Complaint by Alan R. Joslin and Robin L. Christante against 14th District Court Judge for orders of superintending control. Superintending control granted and criminal charges against the defendants ordered dismissed. The people appeal by leave granted. The Court of Appeals ordered a stay of the dismissal of charges pending appellate resolution. Orders of superintending control vacated.

*Erwin A. Salisbury,* for plaintiff Christante.

*Frank J. Kelley,* Attorney General, *Robert J. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *John J. Hensel,* Senior Assistant Prosecuting Attorney, for the people.

Before: D. C. RILEY, P. J., and T. M. BURNS and BEASLEY, JJ.

D. C. RILEY, J. Following a long and tortuous procedural path involving a district court, a circuit court, various panels of the Court of Appeals, and the Supreme Court, the case at bar presents itself for our resolution. While retracing that circuitous route might prove interesting to scholars of legal procedure, we choose to dispense as much as possible with so fruitless an undertaking and proceed

instead to the more significant substantive matters involved.

## I.

The record reflects that on August 1, 1974, an assistant prosecutor in Washtenaw County, acting on the request of an Ypsilanti police officer, authorized prosecution of defendants Joslin and Christante for violation of Michigan's Controlled Substances Act, MCLA 335.301 et seq.; MSA 18.1070(1). On that day, complaints were filed against the defendants and warrants were issued charging possession of marijuana with intent to deliver,[1] a felony carrying a maximum penalty of 4 years imprisonment and $2,000 fine. MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c).

On September 19, 1974, defendants filed motions before the district court to dismiss the charges on the ground that the instant prosecution contravened Ypsilanti City Ordinance No 437,[2] which

[1] The record does not disclose the quantity of marijuana defendants allegedly possessed. At oral argument the prosecutor stated, and defense counsel did not dispute the point, that approximately 100 pounds were involved. We presume this figure is accurate.

[2] Ypsilanti Ordinance No 437, enacted by referendum election on April 1, 1974, provides:

" 'AN ORDINANCE ESTABLISHING RESTRICTIONS ON MARIJUANA AND PENALTIES FOR THE VIOLATIONS THEREOF"

"BE IT HEREBY ORDAINED BY THE CITY OF YPSILANTI:

"(a) No person shall possess, control, use, give away, or sell marijuana or cannabis, which is defined as all parts of the plant cannabis sativa L., whether growing or not; its seed or resin; and every compound, manufacture, salt, derivative, mixture, or preparation of the above, unless such possession, control, use, or sale is pursuant to a license or prescription as provided in Public Act 196 of 1971, as amended. This definition does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compounds, manufacture, sale, derivative, mixture or preparation of the mature stalks, except the resin extracted therefrom, fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination.

"(b) Any violation of this section shall be subject to a sentence of up

"has been held a lawful enactment by the Circuit Court for the County of Washtenaw". Specifically, defendants argued that the Ypsilanti police officer who had filed the complaint in this matter had violated § (d) of the ordinance by taking the case to the Washtenaw County Prosecutor rather than to the Ypsilanti City Attorney as the ordinance requires.

In the circuit court decision on which defendants relied, *Ypsilanti Police Officers' Association v City*

---

to FIVE DOLLARS ($5), including judgment fees and costs, and no probation or any other punitive or rehabilitative measure shall be imposed, provided, however, that this Section shall not be construed to prohibit deferred sentencing. The District Court Clerk shall accept any plea of guilty which is made in the same manner as pleas of guilty for moving traffic violations are accepted as of October, 1973. Persons pleading guilty of violations of this Section shall be allowed to render the sum of FIVE DOLLARS ($5) to the District Court Clerk as a full and complete satisfaction and discharge of liability, and no appearance before a District Judge or other judicial Officer shall be required. In any prosecution for violation of this Section the burden of establishing any license or prescription shall be upon the defendant but this does not shift the burden of proof for the violation.

"(c) In all arrests and prosecutions for violations of this Section, appearance tickets and the relevant procedures set forth in Public Act 147 of 1968, as amended, shall be used.

"(d) No Ypsilanti police officer, or his or her agent, shall complain of the possession, control, use, giving away, or sale of marijuana or cannabis to any other authority except the Ypsilanti City Attorney, and the City Attorney shall not refer any said complaint to any other authority for prosecution.

"(e) Should the State of Michigan enact lesser penalties than that set forth in (b) above, or entirely repeal penalties for the possession, control, use, giving away, or sale of marijuana or cannabis, then this Section, or the relevant portions thereof shall be null and void.

"(f) The People of the City of Ypsilanti specifically determine that the provisions herein contained concerning marijuana or cannabis are necessary to serve the local purposes of providing just and equitable legal treatment of the citizens of this community, and in particular of the youth of this community present as University students or otherwise; and to provide for the public peace and safety by preserving the respect of such citizens for the law and law enforcement agencies of the City. Such provisions are necessary within the City because of the widespread local use of marijuana or cannabis.

"(g) If any portion of this ordinance is ruled unconstitutional or otherwise illegal, the balance of this ordinance shall remain in full force and effect."

*of Ypsilanti,* No 74-9222-CL, an action for declaratory judgment decided on August 21, 1974, Judge Patrick J. Conlin had declared the ordinance valid and constitutional in all but one respect. Interpreting § (d) of the ordinance, Judge Conlin upheld that part of the section requiring city police officers to refer marijuana violations to the city attorney but invalidated the remainder of the section limiting the city attorney's ability to refer complaints to any other authority for prosecution. The court ruled instead that the city attorney, once apprised by a city policeman of a marijuana violation, may elect either to proceed under the ordinance or to refer the matter to the county prosecutor for disposition under state law. For reasons unknown to this panel, however, Judge Conlin did not issue an order of declaratory judgment until March 4, 1975, over 6 months from the decision date of his opinion.[3]

Thus, on October 3, 1974, when District Judge Thomas F. Shea ruled on defendants' motions to dismiss the state charges, Judge Conlin's order of declaratory judgment had not yet been entered. Though aware of the prior decision in circuit court upholding most of the ordinance, Judge Shea nonetheless denied defendants' motions and voided the ordinance in its entirety.

Defendants then sought an order of superintending control before Judge Conlin in the circuit court. By written opinion of October 16, 1974, Judge Conlin, alluding to his prior decision in *Ypsilanti Police Officers' Association, supra,* held that a district judge may not overrule a prior, relevant decision of a circuit judge located in the same county. Judge Conlin then instructed Judge Shea "to treat the Ypsilanti ordinance as a valid

---

[3] No appeal was ever taken from the order of declaratory judgment.

enactment in this and all future cases". Although
at the time Judge Conlin did not order the charges
against defendants dismissed, he later so ruled
while this case awaited appellate resolution. We
issued a stay of Judge Conlin's order of dismissal
pending our decision in the cause.

## II.

At the outset, we must acknowledge that this
case represents a woeful example of an adversary
proceeding. The parties apparently have chosen to
avoid at all costs any discussion of opposing argu-
ments. The Washtenaw County Prosecutor, mount-
ing a broad-based constitutional and statutory at-
tack, would have us nullify the ordinance *in toto.*
Conversely, counsel for defendant Christante, rais-
ing various procedural objections, contends that
we should abstain where possible from discussion
of constitutional issues. Moreover, neither defend-
ant Joslin nor the Ypsilanti City Attorney have
participated in the case on this appeal.

Given, then, these unilateral arguments and our
recognition that the underlying issues transcend
the interests of the instant parties, we proceed to
resolve only those questions pertaining to the facts
at hand.

Of the three contentions advanced by defendant
Christante, one has already been decided by a
prior panel of this Court and another is without
merit. The third involves the question whether a
decision of a circuit judge upholding a municipal
ordinance is binding on a district judge sitting in
the same county. Although the question is intri-
guing, its answer must await another day. As
noted, Judge Conlin had not yet issued his order of
declaratory judgment sustaining the ordinance
when Judge Shea denied defendants' motions to

dismiss. Since a court speaks through its orders, not its opinions, *Jones v Hicks,* 358 Mich 474, 485; 100 NW2d 243 (1960), *In re Spalter,* 31 Mich App 458, 464; 188 NW2d 67 (1971), we hold that there was no circuit-court order extant that could bind the district judge.

Of the prosecutor's arguments, only one is necessarily invoked on the facts at bar. The prosecutor charges that § (d) of the ordinance impermissibly restrains Ypsilanti police officers from enforcing state law. We agree.

By its terms, § (d) purports to prevent the Ypsilanti police from complaining to anyone but the city attorney about marijuana violations. The law is clear, however, that municipal police are authorized to enforce state law. MCLA 764.15; MSA 28.874 ("Any peace officer may, without a warrant, arrest a person—(a) For the commission of any felony or misdemeanor committed in his presence; [or] (b) When such person has committed a felony although not in the presence of the officer"). See also, *Odinetz v Budds,* 315 Mich 512; 24 NW2d 193 (1946). The power of a city to enact ordinances "relating to its municipal concerns, property and government, [is] subject to the constitution and law". Const. 1963, art 7, § 22.

Accordingly, to the extent § (d) limits the authority of city police to enforce state law, we hold it void. Hence the district court properly denied defendants' motions to dismiss the state charges, § (d) of the ordinance being no bar to prosecution under the Controlled Substances Act.

We expect that municipal police officers in performing their dual functions as representatives of the city and state will exercise their considerable discretion, 16 McQuillin, Municipal Corporations

(3d ed), § 45.15, p 616, in a rational, evenhanded manner. The day may soon arrive, however, when the legitimate exercise of that discretion causes this Court and ultimately the Supreme Court to be confronted with the issues left unresolved by today's decision.

Whatever the judgment eventually pronounced on the validity of the remaining portions of the ordinance, we must recognize that a sizable contingent of our citizens,[4] as well as the administrations in Lansing[5] and Washington,[6] no longer view as effective, necessary or reasonable the present crim-

---

[4] Besides Ypsilanti, other Michigan cities have significantly reduced criminal penalties for marijuana violations. *See* Ann Arbor Charter, § 16.2 (charter amendment adopted by referendum vote, using language substantially similar to the Ypsilanti ordinance) and East Lansing ordinances, ch 108, §§ 9.107–9.110 (regulation enacted by city council, applying solely to *possession* and *use* of marijuana).

With regard to the latter ordinance, the East Lansing City Attorney has informed the Court by letter that:

"Our office and the Police Department have found this ordinance to be a most affective [sic] tool in dealing with these types of violations, especially with respect to first offenders, or persons who are not otherwise identified to be dealers or distributors. *It applies a modest sanction for this offense, but allows us to deal with it on a most cost effective basis, as opposed to prosecution under the State Statutes as a high misdemeanor.*"(Emphasis added.)

[5] Governor William G. Milliken recently observed:

"An area which requires more evaluation is the issue of legalizing the use of marijuana. I continue to oppose the legalization in view of the lack of scientific evidence as to its safe use. But I continue to believe that far too much importance is being placed on the arrest and prosecution of individuals who may possess a small amount of this substance for personal use. I believe that the Legislature should act to reduce the penalties for possession of small amounts of marijuana in order that we might devote more of our limited crime-fighting resources to the battle against hard drugs and more serious crimes." Michigan State of the State Message, January, 1977, p 56.

[6] As reported in NY Times, March 15, 1977, § A, at 30:

"Dr. Peter G. Bourne, [President] Carter's choice to head the Office of Drug Abuse Policy, told a special House committee on narcotics that the Administration 'will continue to discourage marijuana use, but we feel criminal penalties that brand otherwise law-abiding people for life are neither an effective nor an appropriate deterrent.'"

Similarly, *see* Erickson, *Deterrence and Deviance: The Example of Cannabis Prohibition,* 67 J Crim L & C 222 (1976).

inal sanctions punishing possession by adults of small amounts of marijuana.

To be sure, this question of policy is best addressed to the Legislature. But perhaps the time has arrived for our lawmakers to see the handwriting on the wall. In light of the developing trend toward decriminalization in the states, the time seems ripe for a responsive Legislature to reexamine the issue. If after thorough inquiry, Michigan declines to follow the lead of Oregon, California, Ohio, Maine, Minnesota, Colorado, Alaska and South Dakota,[7] then perhaps it will opt for an intermediate step, namely, delegating express authority to the cities to enact ordinances lessening current state penalties. *Cf., People v Hanrahan,* 75 Mich 611; 42 NW 1124 (1889).

The courts, too, have a significant role to play. The question deferred in *People v Alexander,* 56 Mich App 400, 404; 223 NW2d 750 (1974)—whether the private possession or use of marijuana is a protected right—can only be postponed so long. Perhaps a panel of this Court, or a majority of the Supreme Court, may soon decide (based on briefs and argument that fully ventilate the issue) whether to adopt the view previously expressed by now Chief Justice THOMAS G. KAVANAGH:

"As I understand our constitutional concept of government, an individual is free to do whatever he pleases, so long as he does not interfere with the rights of his neighbor or of society, and no government—state or Federal—has been ceded the authority to interfere with that freedom. As has been said:

---

[7] *See* Ore Rev Stat § 167.207(3); West's Ann Cal Health and Safety Code § 11357 (1977 Supp); Ohio Rev Code § 2925.11(c)(3), (D) (1976 Supp); Maine Rev Stat Ann, tit 17-A, §§ 1101, 1114; tit 22, § 2383 (1975 Supp); Minn Stat Ann § 152.15 (1977 Cum Supp); Colo Rev Stat Ann § 12-22-412 (1976 Supp); Alaska Stat § 17.12.110(d)–(f), *as enacted,* ch 110, Session Laws of Alaska (1975); and ch 158, 1976 Session Laws of South Dakota, § 42-6. *See also* NY Times, April 1, 1977, § A, at 10.

" '[T]he sole end for which mankind are warranted, individually or collectively, in interfering with the liberty of action of any of these number, is self-protection. That the only purpose for which power can be rightfully exercised over any member of a civilized community, against his will, is to prevent harm to others. His own good, either physical or moral is not a sufficient warrant.' J. S. Mill, *On Liberty,* Chapter 1.

"Whatever the validity of the concept that *traffic* in marijuana is freighted with a proper public interest, it is extending the concept entirely too far to sanction proscription of possession and private use of it. Although it is conceivable that some legitimate public interest might warrant state interference with what an individual consumes, 'Big Brother' cannot, in the name of *Public* health, dictate to anyone what he can eat or drink or smoke in the *privacy* of his own home.

"In my view when the legislature proscribed the possession and private use of marijuana as a *Public* health measure it did so unconstitutionally." *People v Sinclair,* 387 Mich 91, 133–134; 194 NW2d 878 (1972). (Emphasis in original.)

Even if this position cannot garner the requisite consensus, the courts may yet subscribe to the recent holding of the Alaska Supreme Court in *Ravin v State,* 537 P2d 494, 511 (1975):

"[W]e conclude that no adequate justification for the state's intrusion into the citizen's right to privacy by its prohibition of possession of marijuana by an adult for personal consumption in the home has been shown. The privacy of the individual's home cannot be breached absent a persuasive showing of a close and substantial relationship of the intrusion to a legitimate governmental interest. Here, mere scientific doubts will not suffice. The state must demonstrate a need based on proof that the public health or welfare will in fact suffer if the controls are not applied.

"The state has a legitimate concern with avoiding the

spread of marijuana use to adolescents who may not be equipped with the maturity to handle the experience prudently, as well as a legitimate concern with the problem of driving under the influence of marijuana. Yet these interests are insufficient to justify intrusions into the rights of adults in the privacy of their own homes." (Footnote omitted.)

We quote these extracts from prior cases not to express our personal views (indeed, we agree with the *Ravin* court that the use of any psychoactive drugs should be discouraged, *id.),* but rather to emphasize the need for an evaluation of whether the present mode of discouragement is appropriate or permissible.

The orders of superintending control issued by the circuit court are vacated. Prosecution of defendants under state law may proceed.

Beasley, J., concurred.

T. M. Burns, J. *(concurring).* While I can add little to Judge Riley's very fine opinion, certain points bear emphasis.

I concur in the holding that the City of Ypsilanti cannot by ordinance prohibit the enforcement of state criminal statutes by city police officers. We leave intact, however, the remainder of the ordinance which in effect provides the Ypsilanti police with a choice in dealing with marijuana offenses.

It is unfortunate that it was necessary for the city to challenge the supremacy of the state. Encouragement should be given, however, to good faith attempts on the part of the city to reflect conditions existing in the local community as long as there is no direct conflict with statewide legislation.

As suggested by Judge Riley, the most forth-

right resolution to this conflict would be remedial action on the part of the Legislature. Quite simply, it is time to remove at least some, if not all, substance abuse problems from the criminal justice arena. The use and possession of marijuana, for example, is a medical, social, political and moral problem. It should not be a criminal problem. The costs of making it such are just too great. The waste of time, money and other resources of the criminal justice system on enforcement of marijuana laws can no longer be justified. Much more significant, however, are the inestimable costs to both individuals and society of making criminals of decent human beings and the encouragement of the citizenry, particularly the young, to disrespect and distrust our laws and those who make and enforce them.