PEOPLE v BROOKS

Docket No. 58734. Argued January 6, 1978 (Calendar No. 16).—Decided January 19, 1979.

Leland H. Brooks was convicted by a jury in Oakland Circuit Court, Richard D. Kuhn, J., of receiving stolen property with a value over $100. Police officers who were investigating a stolen car ring followed three cars, one of which, a Lincoln Continental, had already been determined to have been stolen and to have an altered vehicle identification number, from a motel parking lot which they left together to a gasoline station where all stopped. The defendant was driving a Cadillac with Ohio license plates. The police asked him for his driver's license and the registration of the Cadillac. The defendant gave the officers a license, which was in his name, and a purported registration of the Cadillac in the name of Willie J. Benman of Ohio. One officer, who had special training in identifying altered vehicle identification numbers, testified that the numerals stamped on a plate affixed to the dashboard of the Cadillac in plain view matched the numerals on the purported registration but appeared to be out of alignment and therefore falsified, and that the defendant agreed to accompany the police to the police

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 7 Am Jur 2d, Automobiles and Highway Traffic § 308.
[2] 5 Am Jur 2d, Arrest §§ 26, 30-32.
[3, 4] 68 Am Jur 2d, Searches and Seizures § 23.
[5, 6] 68 Am Jur 2d, Searches and Seizures §§ 34, 99, 106.
[7-9, 20] 68 Am Jur 2d, Searches and Seizures § 34.
[9] 68 Am Jur 2d, Searches and Seizures §§ 2, 4.
[10] 68 Am Jur 2d, Searches and Seizures § 2.
[11, 12, 15] 5 Am Jur 2d, Arrest §§ 24, 26, 30-32.
[13] 68 Am Jur 2d, Searches and Seizures § 44.
[14] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 307, 308.
[16] 68 Am Jur 2d, Searches and Seizures §§ 2, 4.
[17] 29 Am Jur 2d, Evidence § 425.
   68 Am Jur 2d, Searches and Seizures §§ 35, 61.
   Modern status of rule governing admissibility of evidence obtained
      by unlawful search and seizure. 50 ALR2d 531.
[18] 68 Am Jur 2d, Searches and Seizures § 47.
[20] 68 Am Jur 2d, Searches and Seizures §§ 37, 93.

station for further investigation. At the police station the police found identification numbers on the engine and frame of the Cadillac that did not match the one on the dashboard, and discovered that the car had been reported stolen under the true identification number. When the police formally arrested the defendant on a charge of car theft and booked him, they made an "inventory search" which disclosed a temporary driver's license, in the name of Benman, hidden in one of his socks. This license was admitted into evidence by the trial court after a suppression hearing. The Court of Appeals, T. M. Burns, P.J. (D. E. Holbrook, Jr., J., concurring in result only, and V. J. Brennan, J., dissenting), reversed the defendant's conviction and remanded (Docket No. 18081). The people appeal. *Held:*

1. Possession of a vehicle with an altered identification number is prima facie evidence of violation of the statute which makes misrepresenting the vehicle identification number a misdemeanor. The officers were justified in concluding that the defendant was committing the misdemeanor of misrepresenting the identity of a motor vehicle in their presence. They had observed the defendant driving a late model Cadillac (a frequent target of stolen car rings) and leaving a motel and traveling together with a late model Lincoln Continental Mark IV (also a frequent target of stolen car rings). They knew also that the vehicle identification number on the Continental had been altered and that the car had been stolen. When they asked the defendant for the Cadillac's registration, he handed them a registration bearing the name of Willie J. Benman of Ohio. They observed that the vehicle identification number on the Cadillac's dashboard also had been altered and that it matched the number on the purported registration. These observations, taken together, were more than sufficient to justify a belief that the defendant was misrepresenting the identity of a motor vehicle in their presence, although it is true that the officers did not observe the defendant physically altering the vehicle identification number on the dashboard of the Cadillac.

2. The Legislature could not have intended that the police must witness the physical act of altering the vehicle identification number as well as the act of misrepresenting in order to arrest a defendant without a warrant for commission of this crime. To interpret the statute as having that requirement would for all practical purposes make the statute unenforceable. The physical act of alteration is rarely observed. Furthermore, stolen automobiles are extremely mobile and fungible.

The Legislature must have been aware of these facts when it made possession of a motor vehicle with an altered vehicle identification number prima facie evidence of commission of this crime. When, as here, a police officer observes the accomplished fact of physical alteration together with an act of misrepresentation, it would make little sense to send the possessor freely on his way. By the time a warrant could be obtained, the culprit and the car would be gone. Therefore, the arrest of the defendant at the gasoline station and the seizure of the automobile, which was the primary evidence of the crime, were proper, assuming that the defendant is correct in arguing that he was actually under arrest at that time.

3. If an individual has a reasonable expectation of privacy in the area searched, a search has occurred. There is no reasonable expectation of privacy in the vehicle identification number itself. All such numbers are on the outside of the automobile, or in plain view. No entry of the automobile is required to read the number. The means taken by the police to read the number in this case did not invade a constitutionally protected area. It would have been proper to compare the numbers at the gasoline station, and, because the car was properly seized and transported, it was not less so at the police station.

4. On the facts of this case, it was reasonable for the police officer to unfold what appeared to be a temporary driver's license concealed in one of the defendant's socks. The object of the investigation was a car theft ring to which each police discovery was firmly attached. The furtive behavior of the defendant, the color and appearance of the piece of paper he was trying to hide, the stolen car and the disparity between driver's license (Brooks) and registration (Benman) would have led reasonable persons even less highly trained than the officers to believe the folded paper was evidence of the crime. Under these circumstances, the contention of the defendant that the unfolding constituted a "search" within an inventory search must be met with the conclusion that it was not a search because there is no reasonable expectation of privacy in a temporary driver's license, and even if it were held to be a search it was based on probable cause. However, the paper was properly admitted into evidence on at least two other theories: (1) it was reasonable to unfold the paper to determine what was being inventoried; (2) it was reasonable to look in the folded paper for small but dangerous objects, for drugs, or for other contraband. Under any theory here proposed, the judge did not

err in ruling, after a suppression hearing, that the temporary driver's license was admissible in evidence.

The decision of the Court of Appeals is reversed and the defendant's conviction is reinstated.

Justice Levin, with Justice Kavanagh, dissenting, would affirm the judgment of the Court of Appeals and remand for a new trial.

1. The automobile was not subject to seizure at the gas station as an incident of arrest. The Code of Criminal Procedure specifically defines the extent of an officer's powers to arrest without a warrant. A police officer is authorized by statute to arrest without a warrant only for a misdemeanor committed in the officer's presence. The presence requirement is not satisfied by probable cause or the linguistic equivalent stated by the Court in this case, "justified in concluding". In situations where an arrest warrant might be constitutionally required, exigent circumstances may justify an officer, otherwise authorized to make an arrest, to arrest without a warrant. Exigency of circumstances does not bear on whether the offense was committed in the officer's presence. The Supreme Court has stated and restated that an arrest without a warrant for a misdemeanor may not be made on probable cause. An officer may not arrest for a misdemeanor without a warrant unless he actually sees the offense which constitutes the misdemeanor. The recent amendment to the statute allowing arrest on probable cause of a drunk driver involved in an accident underscores that arrests without warrant for misdemeanors may not generally be made on probable cause. The Penal Code does not provide that mere possession of an automobile with an altered identification number is an offense, nor does it proscribe concealing or misrepresenting the identity of an automobile. The offense is concealing or misrepresenting *by* removing or defacing or *by* replacing a serial number. Removing, defacing, or replacing the number was not observed by the officers, and accordingly, the offense did not occur in their presence. At the gasoline station, an officer observed only that the identifying numbers of the dashboard VIN were out of alignment, and may have surmised that someone at some time had altered the numbers, but he did not observe the defendant "remove or deface" or "destroy" or "alter" or "replace" a number in his presence.

The validity of an arrest, search, or seizure without a warrant depends on the information known to the officer at the time he acts. At the gasoline station the officer did not know,

nor is it claimed that he had probable cause to believe, that a part of the automobile bearing a manufacturer's serial number had been altered. He therefore did not at that time have the requisite basis for invoking the "prima facie evidence" provision of the statute, even if that provision were intended to have application before commencement of a prosecution. More fundamentally, prima facie evidence arising from evidence that an offense has been committed, like evidence constituting probable cause that an offense has been committed, does not transform an offense that has been committed into one committed in the officer's presence.

2. The analysis that there is no expectation of privacy in a vehicle identification number and, therefore, examination of a vehicle identification number does not constitute a "search", supports the admission in evidence of information obtained as the result of close scrutiny which is not admissible under the plain view doctrine because it was not "inadvertently" discovered. That analysis does not, however, justify seizure of an automobile for the purpose of examining it. The Search and Seizure and Warrant Clauses protect against unjustified seizures as well as unjustified searches. Whether the examination of a vehicle identification number is a search or not, the seizure itself must be justified where the vehicle is seized before it is examined. Absent probable cause to search the automobile at the scene or to seize and remove it to the police station, information obtained upon examination—whether a "search" or not—at the police station should be suppressed.

3. Brooks was not *legally* arrested, because he was not subject to arrest at the gasoline station for a misdemeanor not committed in the officer's presence, nor was he subject to arrest at the police station on the basis of information obtained as a result of an unjustified seizure of the automobile. The driver's license therefore was not subject to seizure as an incident of a *lawful* arrest at the police station. Assuming that there was probable cause to search (unfold) the license because it appeared to be evidence of the felony for which Brooks was arrested, there were no exigent circumstances dispensing with the need to obtain a warrant; the police had physical possession of the license. The Warrant Clause continues to apply to post-arrest searches and seizures where the defendant was not lawfully arrested.

There is an expectation of privacy in a driver's license except in those circumstances specifically provided for by statute. A driver's license, although issued by state government, is not subject to examination by police officers at their will; for

example, under existing precedent an officer could not require a pedestrian or householder to exhibit his driver's license.

The exigencies of jail administration justify the booking procedure exception and the resulting invasion of privacy of persons whether legally arrested or not. The scope of the exception is defined by its justification, the exigencies of jail administration. Jail administration does not require close scrutiny of the personal belongings of the arrested person; there is no need to read papers and documents to inventory them. Nor can the unfolding be justified on the strained theory that it was reasonable to unfold it to look for small but dangerous objects, for drugs, or for other contraband: having taken possession of the folded license, the officer was no longer endangered by any object secreted in it.

Justice Moody agreed with Justice Levin that the defendant was not subject to a warrantless arrest for the specific misdemeanor and, therefore, the seizure of the Cadillac was not justified as incident to a valid misdemeanor arrest. Accordingly, he would affirm the reversal of the defendant's conviction and remand for a new trial. It is not necessary to reach the question whether the temporary driver's license discovered in the defendant's sock was the product of an improper search or seizure. Since the incarceration of the defendant was not justified the inventory search which produced the temporary driver's license was invalid.

70 Mich App 7; 245 NW2d 384 (1976) reversed.

### Opinion of the Court

1. Automobiles — Criminal Law — Identification Number — Alteration — Misrepresentation.

   Possession of a vehicle with an altered identification number is prima facie evidence of violation of the statute which makes it a misdemeanor to misrepresent the identity of a motor vehicle (MCL 750.415; MSA 28.647).

2. Arrest — Without Warrant — Automobiles — Identification Number — Alteration.

   A police officer was justified in concluding that a defendant was committing the misdemeanor of misrepresenting the identity of a motor vehicle in his presence and therefore in arresting him where the officer, who had special training in identification of altered vehicle identification numbers, observed that on a plate affixed to the car's dashboard in plain view two of the numerals appeared to be out of line with the rest, which was not the usual way the numbers are embossed by automobile manufac-

turers; the defendant had given the officers a purported registration for the car in another man's name with a vehicle identification number which matched the altered number on the dashboard; the police were following the defendant's car while he was traveling in tandem with another car which was known to be stolen and to have an altered vehicle identification number; and both cars were models which are frequent targets of stolen car rings (MCL 750.415, 764.15[a]; MSA 28.647, 28.874[a]).

3. ARREST — WITHOUT WARRANT — AUTOMOBILES — IDENTIFICATION NUMBER — ALTERATION — MISREPRESENTATION — STATUTES.

The Legislature could not have intended that the police must witness the physical act of altering a motor vehicle identification number as well as the act of misrepresenting the identity of the vehicle in order to arrest a defendant without a warrant for commission of this misdemeanor; the Legislature must have been aware of the facts that illicit alteration of vehicle identification numbers is not likely to occur in plain view, and that stolen automobiles are extremely mobile and fungible so that by the time a warrant could be obtained, the culprit and the car would be gone (MCL 750.415, 764.15[a]; MSA 28.647, 28.874[a]).

4. SEARCHES AND SEIZURES — AUTOMOBILES — IDENTIFICATION NUMBER.

There is no reasonable expectation of privacy with respect to a vehicle identification number; all such numbers are on the outside of the automobile or they are in plain view; no entry of a constitutionally protected area is required to read the vehicle identification number (US Const, Am IV; Const 1963, art 1, § 11).

5. SEARCHES AND SEIZURES — AUTOMOBILES.

Police officers who could properly compare the vehicle identification numbers on the dashboard and on the engine and frame of an automobile at the place where it was stopped could constitutionally do so later at the station house without first obtaining a warrant where the seizure and transportation of the car to the station was proper (US Const, Am IV; Const 1963, art 1, § 11).

6. SEARCHES AND SEIZURES — ARREST — INVENTORY SEARCH.

The unfolding and inspection by police of a temporary driver's license in the course of an inventory search of a defendant who was under arrest for car theft was reasonable and based upon

probable cause, even if it constituted a "search" apart from proper inventory search of a prisoner, where the defendant attempted to conceal the paper in his sock, the color and appearance of the folded paper was partially visible in the sock, and the defendant was arrested in a stolen car and produced a driver's license with one name and an automobile registration in another name (US Const, Am IV; Const 1963, art 1, § 11).

7. SEARCHES AND SEIZURES — ARREST — INVENTORY SEARCH — EVIDENCE.

A temporary driver's license which was unfolded and seized by police in the course of an inventory search of a defendant who was under arrest was properly admitted into evidence because it was reasonable for police to unfold and examine the paper to determine what personal property of the defendant was being inventoried (US Const, Am IV; Const 1963, art 1, § 11).

8. SEARCHES AND SEIZURES — ARREST — INVENTORY SEARCH — EVIDENCE.

A temporary driver's license which was unfolded and seized by police in the course of an inventory search of a defendant who was under arrest was properly admitted into evidence because it was reasonable for police to look in the folded paper which had been partly concealed in the defendant's sock for small but dangerous objects and for drugs or other contraband (US Const, Am IV; Const 1963, art 1, § 11).

9. SEARCHES AND SEIZURES — DRIVER'S LICENSE.

There is no reasonable expectation of privacy in a folded temporary driver's license which has the color and appearance of a temporary driver's license and which is obtained with no unlawful intrusion upon the defendant's person or constitutionally protected property (US Const, Am IV; Const 1963, art 1, § 11).

10. SEARCHES AND SEIZURES — WORDS AND PHRASES — UNREASONABLE.

An "unreasonable" search and seizure means excessive, beyond a normal or proper limit, exceeding limits set by good judgment or fairness, but there can be no absolute definition of "unreasonable"; each determination must be made within a specific context (US Const, Am IV; Const 1963, art 1, § 11).

DISSENTING OPINION BY LEVIN, J.

11. ARREST — WITHOUT A WARRANT — MISDEMEANORS.

*An arrest without a warrant for a misdemeanor is authorized by*

*statute only where the misdemeanor is committed in the arresting officer's presence; the issue is not whether there is prima facie evidence, or even probable cause to believe that the defendant at some time committed the misdemeanor, or whether the officer was justified in concluding that the defendant was committing the offense in his presence, but whether he committed it in the presence of the officer (MCL 764.15; MSA 28.874).*

12. ARREST — WITHOUT A WARRANT — MISDEMEANORS.

*An arrest without a warrant for a misdemeanor may not be made on probable cause; an officer may not make such an arrest unless he actually sees the offense which constitutes the misdemeanor (MCL 764.15; MSA 28.874).*

13. ARREST — WITHOUT A WARRANT — CONSTITUTIONAL LAW — EXIGENT CIRCUMSTANCES.

*Exigent circumstances may justify an officer otherwise authorized to make an arrest, to arrest without a warrant in those situations where an arrest warrant might be constitutionally required, but exigency of circumstances does not bear on whether a misdemeanor was committed in the officer's presence as required by the statute defining an officer's powers to arrest without a warrant (MCL 764.15; MSA 28.874).*

14. AUTOMOBILES — IDENTIFICATION NUMBER — ALTERATION.

*The statutory provision that possession of a vehicle with an altered identification number is prima facie evidence of violation of the statute prohibiting alteration of a vehicle identification number does not provide that mere possession of such a vehicle is an offense, nor does it proscribe concealing or misrepresenting the identity of a vehicle; the offense is concealing or misrepresenting by removing or defacing or by replacing a serial number (MCL 750.415; MSA 28.647).*

15. ARREST — WITHOUT A WARRANT — AUTOMOBILES — IDENTIFICATION NUMBER — ALTERATION.

*The statutory requirement that a misdemeanor be committed in a police officer's presence for arrest without a warrant was not satisfied where a police officer observed only that the numerals of the vehicle identification number on a car the defendant was driving were out of alignment but did not see the defendant "remove or deface" or "replace" a numeral (MCL 750.415, 764.15; MSA 28.647, 28.874).*

16. Searches and Seizures — Automobiles — Identification Number.

   *That there is no expectation of privacy in a vehicle identification number and, therefore, examination of a vehicle identification number does not constitute a "search", does not justify seizure of an automobile for the purpose of examining it absent probable cause to search the automobile; the Search and Seizure Clause protects against unjustified seizures as well as unjustified searches (US Const, Am IV; Const 1963, art 1, § 11; MCL 750.415; MSA 28.647).*

17. Searches and Seizures — Automobiles — Probable Cause — Evidence.

   *An automobile, although "the primary evidence of the crime" with which its driver was charged, was not subject to seizure unless there was probable cause to seize it* at the time *it was seized; absent probable cause to search it at the scene of the driver's arrest or to seize it and remove it to a police station, information obtained upon examination, whether a "search" or not, at the police station should be suppressed.*

18. Searches and Seizures — Driver's License.

   *There is an expectation of privacy in a driver's license except in those circumstances specifically provided for by statute; a police officer could not, for example, require a pedestrian or householder to exhibit his driver's license at the police officer's will (US Const, Am IV; Const 1963, art 1, § 11).*

19. Searches and Seizures — Arrest — Inventory Search — Driver's License.

   *Police officers did not have the authority to require a defendant to turn over his personal possessions, revealing in the defendant's sock a folded temporary driver's license issued to another person, where there was not a valid misdemeanor arrest and no probable cause to arrest the defendant on a felony charge; assuming that there was probable cause to search the license by unfolding it because it appeared to be evidence of the crime for which the defendant was arrested, since the police had physical possession of the license, there were no exigent circumstances to justify unfolding it without a search warrant (US Const, Am IV; Const 1963, art 1, § 11).*

Dissenting Opinion by Blair Moody, Jr., J.

See headnotes 11, 14-16.

20. Searches and Seizures — Arrest — Inventory Search.

   *It is not necessary to reach the question whether a temporary*

*driver's license discovered in a defendant's sock during a booking procedure was the product of an improper search or seizure where the defendant's incarceration was not incident to a valid arrest; since the incarceration of the defendant was not justified, the inventory search which produced the temporary driver's license was invalid (US Const, Am IV; Const 1963, art 1, § 11).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *James L. McCarthy,* Assistant Appellate Counsel, for the people.

*Scupholm, Underwood & Porritt* for defendant.

COLEMAN, C.J. Defendant was convicted of receiving stolen property valued at more than $100. In a 1 to 1 to 1 decision, the Court of Appeals reversed, finding that defendant was arrested without probable cause and that he and his automobile had been improperly searched. 70 Mich App 7; 245 NW2d 384 (1976).

We reverse and reinstate the conviction.

I

While investigating a stolen car ring on March 14, 1972, officers of the Michigan State Police Intelligence Section, Organized Crime Unit, had staked out the Telegraph House Motel parking lot. They were watching a 1972 Continental Mark IV which had been identified as stolen and which was known to have an altered vehicle identification number (VIN).

Two other automobiles, a 1969 Cadillac (Ohio license plates) driven by defendant and a Ford Maverick, entered the motel parking lot sepa-

rately. The persons in the cars went into the motel separately, but the drivers of the stolen Mark IV, the Cadillac, and the Maverick left the motel together. They then drove the vehicles on the same route, followed by the state police officers and officers of the Southfield police.

All three cars under surveillance pulled into the same gas station on Nine Mile Road and stopped.

At the gas station, Southfield Officer McKee asked defendant for his license and the Cadillac's registration. The defendant gave Officer McKee a license and a purported registration for the car.[1] McKee handed the documents to his partner, Southfield Officer George. Officer George had been specially trained in the identification of altered VINs. He compared the VIN on the registration proffered by the defendant with the VIN stamped on a plate affixed to the dashboard of the Cadillac in plain view. The VINs matched each other but the VIN on the dashboard appeared to have been altered. At trial, Officer George testified:

"*Q.* Okay. Now, Officer, when you looked at that VIN plate out there at the scene, at the gas station, did you observe anything about it?

"*A.* Yes, sir, I observed that two numbers appeared to be out of line with the rest.

"*Q.* And, which two numbers, please?

"*A.* The first two numbers are 2 and 4 were the numbers.

---

[1] "The licensee shall have such license in his immediate possession at all times when driving a motor vehicle, and shall display the same upon demand of any uniformed police officer or field deputy or inspector or other duly authorized representative of the commissioner who shall identify himself as such." MCL 257.311; MSA 9.2011.

"Every such registration certificate shall at all times be carried in the vehicle to which it refers or shall be carried by the person driving or in control of such vehicle who shall display the same upon demand of a police officer." MCL 257.223; MSA 9.1923.

"*Q.* Okay. And, you did observe that with the naked eye?

"*A.* Yes, sir, I did.

"*Q.* Now, Officer, if you recall, did you confiscate the VIN plate or someone else?

"*A.* Someone else did, sir.

"*Q.* Now, Officer, what transpired next after the VIN plate was checked?

"*A.* At that time I informed Mr. Brooks that we would further—we would like to further check as far as ownership of the vehicle, and asked him if he would mind coming into the station while this check took place.

"*Q.* And, did Mr. Brooks reply?

"*A.* He said he didn't mind, he would come in."

The license given by the defendant to the officers was in the defendant's name, but the purported registration bore the name of a Mr. Willie J. Benman of Ohio.[2]

In the Court of Appeals, Judge T. M. BURNS wrote an opinion with Judge D. E. HOLBROOK, JR., concurring only in the result. Judge V. J. BRENNAN dissented. Judge BURNS said there could "be little dispute that defendant was under arrest when he accompanied the police officer to the Southfield police station".

We do not know the state of defendant's mind as to whether he thought he could refuse the "invitation", but we will give defendant the benefit of his argument that he was in fact arrested at the gas station.

Judge BURNS concluded there was an arrest and

[2] The car had been stolen from Mr. Robert Gorney, of Allen Park, Michigan, on February 7, 1972. Willie J. Benman testified that he had known defendant, that they had worked together at Chrysler and that Mr. Benman had loaned his car to defendant on occasion. The VIN on Mr. Benman's 1969 Cadillac and his registration were the same as the false plate numbers on the dashboard of the stolen 1969 Cadillac.

that it was made without reasonable or probable cause.[3]

Judge BRENNAN's dissent reviewed the circumstances and found them "highly suspicious":

"Defendant was brought under surveillance and was stopped by police because he was driving a vehicle clearly travelling in tandem with two other automobiles, one of which was known to be stolen. The stolen automobile, a Continental Mark IV, was known to have a false VIN plate. All of the vehicles had been originally observed together at the Telegraph House Motel before leaving the motel in a group. In addition, they all travelled in identical route for several blocks to the gas station. Certainly the police officers acted reasonably in stopping and investigating defendant when the vehicles pulled up at the gas station."

He said Officer George's discovery that the Cadillac's VIN plate was altered provided reasonable cause to arrest, a facet of the whole not addressed by Judge BURNS.

MCL 764.15(a); MSA 28.874(a) allows a policeman "without a warrant, [to] arrest a person * * * for the commission of any * * * *misdemeanor committed in his presence*". (Emphasis added.)

It is a misdemeanor to "*misrepresent the identity of a motor vehicle* * * * by removing or defacing the manufacturer's serial number [the

---

[3] "At the time of defendant's arrest, the police knew that defendant was travelling in a group of cars which included a known stolen vehicle, the Mark IV. One of the officers testified that when he observed the Cadillac at the gas station, it appeared to him that two of the numbers on the VIN plate were out of line with the others. On the other hand, defendant presented proper identification and the car registration matched the plates and the VIN number. There is no identification in the record that the police knew that the Cadillac had been stolen or that the defendant had previously been involved with stolen cars. Under these circumstances it is clear that the police were acting on no more than mere suspicion in arresting the defendant."

VIN] * * * or by replacing any part of such motor vehicle * * * bearing the serial number *, * * with a new part, upon which the proper serial number * * * has not been stamped". (Emphasis added.) MCL 750.415; MSA 28.647.[4] Possession of a motor vehicle with an "altered" VIN is, under this statute, "prima facie evidence of violation" of this law.

Under the circumstances of this case, the officers were justified in concluding that the defendant was "misrepresent[ing] the identity of a motor vehicle" in their presence. They had observed the defendant driving a late model Cadillac (a frequent target of stolen car rings) and leaving a motel and traveling together with a late model Lincoln Continental Mark IV (also a frequent target of stolen car rings). They knew also that the VIN on the Continental had been altered and that the car had been stolen. When they asked the defendant for the Cadillac's registration, he handed them a registration bearing the name of Mr. Willie J. Benman of Ohio. They observed that the VIN on the Cadillac's dashboard also had been altered and that the VIN on the purported registration proffered by the defendant matched the altered VIN on the dashboard. These observations, taken together, were more than sufficient to justify a con-

───────────────

[4] "Any person who shall conceal or misrepresent the identity of a motor vehicle or of any mechanical device, by removing or defacing the manufacturer's serial number or the engine or motor number on such motor vehicle, or by replacing any part of such motor vehicle or mechanical device bearing the serial number or engine or motor number thereof if any, with a new part, upon which the proper serial number or engine or motor number has not been stamped, shall be guilty of a misdemeanor.

"In all prosecutions under this section, possession by any person of any motor vehicle, or of any mechanical device with the manufacturer's serial number or the engine or motor number removed, defaced, destroyed or altered or with a part bearing such number or numbers replaced by one on which the proper number does not appear, shall be prima facie evidence of violation of the provisions of this section." MCL 750.415; MSA 28.647.

clusion that the defendant was "misrepresent[ing] the identity of a motor vehicle" in their presence.

It is true that the officers did not observe the defendant physically altering the VIN on the Cadillac's dashboard, although they did observe the misrepresentation—and herein lies the critical point of difference between the analyses in our opinions.

We cannot attribute to the Legislature the intention that the police must witness both the physical act of altering and the act of misrepresenting in order to arrest a defendant without a warrant for commission of this crime.

At the outset, we consider the meaning of "misrepresentation" and observe that it cannot be accomplished by viewing one's own work as it is being done (*i.e.,* in this case, altering the VIN). Black's Law Dictionary (4th ed) provides this definition of misrepresentation:

"Any manifestation by words or other conduct *by one person to another* that, under the circumstances, amounts to an assertion not in accordance with the facts." (Emphasis added.)

To interpret the statute as requiring that the police must witness both the altering and the misrepresentation would for all practical purposes make the statute unenforceable. Persons engaged in the illicit business of stealing and disposing of cars for cash do not ply their trade in public. VIN numbers are not likely to be altered in broad daylight and in plain view. They are doctored in the secrecy of garages and "chop shops" throughout the state. Therefore, the physical act of alteration is rarely observed. Furthermore, stolen automobiles are extremely mobile and fungible. Within

hours they can be driven to another state or country or they can be dissected into their component parts, irrevocably beyond identification or recovery.

We believe the Legislature was aware of these facts when it made possession of a motor vehicle with an "altered" VIN "prima facie" evidence of commission of this crime.[5] When, as here, a police officer observes the accomplished fact of physical alteration together with an act of misrepresentation, it would make little sense to send the possessor freely on his or her way. By the time a warrant could be obtained, the culprit and the car would be long gone.

For these reasons, we hold that the arrest of the defendant at the gas station was valid. Therefore, the Cadillac, which was the primary evidence of the crime, was properly seized incident to the arrest.

## II

After defendant's Cadillac was driven to the Southfield Police Station, it was inspected by Robert Campbell of the National Automobile Theft Bureau. He agreed it "was obvious from looking at [the VIN plate that] it was not an original factory plate or the one inserted by the factory". Among the factors noted was that "the numbers are not straight as when they are automatically embossed".

After checking the plate, Mr. Campbell crawled under the car to check the identification numbers stamped on the outside of the engine and frame. They did not match the numbers on the VIN

---

[5] As noted at p 258 of our brethren's opinion, the "presence" requirement may be modified by the Legislature. It is not of constitutional dimension.

plate. A computer check of the true numbers showed that the Cadillac was stolen. (See fn 2.)

Judge BURNS said that Mr. Campbell had searched the car. He found no justification for the search and concluded that "evidence of the correct vehicle identification numbers, that the VIN plate had been tampered with and the resulting evidence that the car had been stolen should have been suppressed".

He assumed there had been a search. Judge BRENNAN said "the search for the proper VIN was not an illegal 'search' and the results were admissible at trial".

The first inquiry is "whether or not there was a search", "whether * * * the police conduct violated the defendant's reasonable expectation of privacy".[6] The test to determine if a search occurred can be simply stated: "if an individual has a reasonable expectation of privacy in the area searched * * * a search has been conducted".[7]

In *People v Valoppi,* 61 Mich App 470; 233 NW2d 41 (1975) (cited by Judge BRENNAN), the police checked a hidden VIN to determine that a car was stolen. The defendant said there was an illegal search. The Court of Appeals found "no search took place" citing *United States v Johnson,* 431 F2d 441 (CA 5, 1970), and *United States v Polk,* 433 F2d 644 (CA 5, 1970).

The *Johnson* decision was an *en banc* affirmance of an earlier opinion. The circuit judges found

"that inspections of motor vehicles performed by police officers, who were entitled to be on the property where the vehicles were located, which in no way

[6] See *People v Krontz,* 50 Mich App 495; 213 NW2d 593 (1973); *People v Oliver,* 63 Mich App 509; 234 NW2d 679 (1975).

[7] See *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973). Also see *People v White,* 392 Mich 404; 221 NW2d 357 (1974).

damaged the vehicles and were limited to determining the correct identification numbers thereof were not searches within the meaning of the Fourth Amendment; and that alternatively, if either of such inspections constituted a Fourth Amendment search, then no search warrant was necessary because such inspections were reasonable and did not violate the right of the people to be secure in their persons, houses, papers or effects".

*Johnson* was further explained in *Polk* which held there can "be no reasonable expectation of privacy with respect to the identity of the VIN". *Polk* was extensively quoted in *Valoppi.*

The Seventh Circuit considered a situation similar to ours in *United States v Zemke,* 457 F2d 110 (CA 7, 1972), *cert den,* 406 US 947 (1972). An Indiana state policeman noticed two motorcyclists parked under a bridge and stopped to see if they needed assistance. They did not. The officer then checked their licenses and "glanced" at the vehicle identification numbers. The numbers "appeared to him to have been changed". In Indiana, as in Michigan, it is prima facie evidence of a crime to possess a vehicle with altered numbers.

The officer told the cyclists about the law and said he "would like to look into it a little more carefully". The cyclists agreed to go with him to a service station down the road. While there, the officer discovered that the hidden serial numbers did not match the visible ones. He arrested both cyclists.

On appeal, the cyclists said the officer "did not have probable cause to search their vehicles without their consent and * * * did not have probable cause to arrest them" until after the search. The Seventh Circuit found the contentions "meritless".

The Court found "nothing unreasonable nor any

improper invasion of the defendants' rights" in the officer's noting that the identification numbers appeared altered:

"Even if the officer's glance had brought merely the suggestion of an alteration to his mind it should not in our opinion be a basis for him just to drop the matter there subject to checking through records back at the post while the cyclists proceeded merrily toward unknown destinations."

The Court did not "consider the police activity at the roadside spot as being a search". Even if it were considered a search, "it would bring into play the application of the 'plain view' doctrine".

The Court said the officer had "adequate probable cause" to check hidden numbers at the original site. Therefore

"[s]ince the completion of the inspection was permissible at the point of first contact it did not become less so when and where actually conducted".

Similarly, in the case at bar, because it would have been proper at the gas station to compare the true VIN under the car with the altered VIN plate in plain view above (and because the seizure and transportation of the car to the station was proper), it was not less proper at the police station. There is no reasonable expectation of privacy in the VIN itself. All such numbers are on the outside of the automobile, or they are in plain view. No entry is required to read the VIN. The means taken by the police to read this VIN did not invade a constitutionally protected area.

### III

After Mr. Campbell found the VIN on the un-

derside of the Cadillac and after a computer check disclosed that the Cadillac was stolen, defendant was formally arrested. He was taken to the booking room where an inventory search was made.

When defendant took off his left sock, Officer McKee noticed a small piece of paper tucked into it. In contrast to removal of his shoes and right sock, defendant removed the left sock carefully and slowly and appeared to be trying to tuck the paper further into it with his thumb. The officer shook the sock and a "peach or flesh-colored" folded piece of paper fell out. It appeared to Officers McKee and George to be a temporary driver's license. When Officer McKee unfolded it, he found it was in fact a temporary driver's license for Willie J. Benman, the same name as that on the registration which defendant displayed at the gas station. The license was admitted into evidence at trial after a suppression hearing.

Judge BURNS said that "[s]ince the incarceration of the defendant was unjustified, the inventory search which produced the temporary driver's license was invalid". Judge BRENNAN described the search as occurring "[o]nly following formal, valid arrest".

Defendant concedes in this Court that if the original arrest was lawful, "the seizure of the folded paper in the instant case would not be the result of a search and must be regarded as proper". However, defendant claims that "the unfolding and inspection of the seized paper presents an entirely new and separate situation" and that a search warrant was necessary prior to its unfolding and subsequent admission into evidence.

In *People v Henry Robinson,* 37 Mich App 115; 194 NW2d 537 (1971), the defendant had been improperly arrested. During an inventory search,

the police saw a lighter which connected defendant with another crime. The majority refused to suppress the lighter because defendant had not objected to its admission prior to trial or when it was introduced.

The concurrence noted:

"When a person is arrested and jailed it is a customary procedure to require him to remove and deposit his personal belongings with the jailer.

"Information obtained by a police officer through the exercise of his senses as he observes articles being removed by a prisoner from his pockets and transferred to a receptacle for safekeeping is not information obtained as a result of a search."

In *People v Robinson,* 388 Mich 630; 202 NW2d 288 (1972), our Court affirmed, agreeing with the reasoning of the majority and with those two paragraphs of the concurring opinion.

The defendant in *People v Obadele,* 58 Mich App 139; 227 NW2d 258 (1975), was arrested for carrying weapons in a car. At the station house, he was searched. The police found three vials in a pouch attached to his belt. One vial contained a controlled substance. While not a search incident to an arrest, the Court said the station house search "was a proper 'inventory search' and the controlled substance should not have been suppressed".

In *People v Walker,* 58 Mich App 519; 228 NW2d 443 (1975), the defendant was arrested on an outstanding nonsupport warrant. During the station house inventory search, the police noticed a piece of tinfoil in his hair. They took it, opened it up and found heroin.

On appeal, defendant argued that opening the packet was an illegal search. The Court said an

inventory procedure "is designed to prevent the introduction of weapons and contraband * * * and is a protective measure for police and prisoner alike". The Court said it "would be naive and pointless to assume that law enforcement officials may store an arrestee's personal effects without first determining what it is they are inventorying".

The defendant in *People v Rivard*, 59 Mich App 530; 230 NW2d 6 (1975), was arrested for armed robbery. During the inventory, the police noticed he was wearing a blue sapphire ring. The next day a detective reviewed a list of stolen property and realized that the ring could be connected with the robbery. He obtained it from defendant's personal property.

Defendant moved to suppress the ring saying it was the result of an illegal search. The Court of Appeals rejected this argument:

"The item had remained in police custody after having been discovered when defendant deposited his personal belongings with police prior to being jailed. Defendant concedes that no warrant would have been required to seize the ring during the inventory. * * * Thus, a search warrant to again look at the ring, already in police custody, does not make sense. * * * [A]ny expectation of privacy with respect to that item had at least partially dissipated so that no reasonable expectation of privacy was breached by Detective Van Alstine taking a 'second look' ".[8]

Even more to the point is *United States v Edwards*, 415 US 800; 94 S Ct 1234; 39 L Ed 2d 771 (1974), where articles of clothing were taken from the defendant ten hours after his arrest. The Court said "it is difficult to perceive what is unrea-

---

[8] See *United States v Grill*, 484 F2d 990 (CA 5, 1973), *cert den*, 416 US 989 (1974).

sonable about the police examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest". The Court found that the First Circuit "captured the essence of situations like this" in *United States v. DeLeo,* 422 F2d 487 (CA 1, 1970):

"While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence."

Under the agreed facts of our case, it was reasonable for the officer to unfold what appeared to be a temporary driver's license. The fulcrum of the investigation was a car theft ring to which each police discovery was firmly attached. The furtive behavior of defendant, the color and appearance of the piece of paper he was trying to hide, the stolen car and the disparity between driver's license (Brooks) and registration (Benman) would have led reasonable persons even less highly trained than the officers to believe the folded paper was evidence of the crime. Under these circumstances, the contention of defendant that the unfolding constituted a "search" within an inventory search must be met with the conclusion that it was not a search because there is no reasonable expectation of privacy in a temporary driver's license, and even if we were to hold it to have been a "search" it was reasonable.[9]

However, the paper was properly admitted into

[9] See *United States v Edwards,* 415 US 800; 94 S Ct 1234; 39 L Ed 2d 771 (1974) (seizure of arrestee's clothing the next day to search for paint particles).

evidence under at least two other theories offered by the people.

(1) It was reasonable to unfold the paper to determine what was being inventoried. (*E.g.,* if it had been lost or misplaced, defendant could have claimed it was a negotiable instrument or something else of value.)

(2) It was reasonable to look in the folded paper for small but dangerous objects, for drugs, or for other contraband.

Under any theory here proposed, the judge did not err in ruling, after a suppression hearing, that the temporary driver's license was admissible in evidence.

### IV. SUMMARY

The initial sequence of events culminated when defendant, another driver and a man in an automobile known to be stolen and under surveillance drove the same route to the same gas station and stopped. At this point, two Southfield police officers approached defendant and lawfully asked him to produce his driver's license and automobile registration. MCL 257.311; MSA 9.2011 and MCL 257.223; MSA 9.1923. They were in different names. A check of the registration with the VIN in plain view on the dashboard revealed the same number—but a VIN visibly altered. The numbers were out of line. It is a misdemeanor to conceal or misrepresent the identity of a motor vehicle by using certain devices and it is prima facie evidence of such an offense to be in possession of a car with an altered identification number. The arrest of the defendant, whether it occurred at the gas station or at the police station, was valid. The Cadillac was properly seized incident to the arrest.

Although there is some question whether an arrest actually was made, at that time, we give defendant the benefit of his argument that he was in fact arrested. The officers or another expert could have crawled under the car and checked the VIN on the frame and engine. The car was driven instead to the police station.

The next sequence of events took place in the police station when an expert did in fact crawl under the automobile to see the VIN stamped on the underside. No entry of the car was necessary. There was no "search" needed to compare the dashboard VIN with those on the outside of the car but on the underside.

There was no reasonable expectation of privacy in the identification numbers and no unlawful intrusion to obtain them. Even if we had agreed with defendant that a search took place, it would have been permissible at the gas station and given the fact that the car was properly seized and transported "did not become less so at the police station". *(Zemke.)* There was no invasion of a constitutionally protected area. The police at no time exceeded their authority.

When it was verified at the police station that the automobile was stolen, defendant was placed under formal arrest for car theft and the third sequence took place. The only question remaining was whether unfolding the temporary driver's license in defendant's left sock during the inventory search was technically a "search" within the valid inventory search so that a search warrant was required to unfold the paper. Under any of the proposed theories, defendant must fail. Again, no constitutionally protected area was invaded. There is no reasonable expectation of privacy in a temporary driver's license, believed to be such when

unfolded by an officer. It was obtained with no unlawful intrusion upon defendant's person or protected property. The officer's actions under these circumstances were reasonable. Further, the unfolding would have been lawful under either of the prosecutor's other proffered theories.

When considering the boundaries of "unreasonable searches and seizures", we constantly are faced with the conflict between the need to apply realistic standards of law enforcement and the need to protect citizens from unreasonable intrusions into their privacy.[10]

Sometimes forgotten in debate is the word "unreasonable". It means excessive, beyond a normal or proper limit. It means exceeding limits set by good judgment or fairness. In law, there can be no absolute definition of "unreasonable". Each determination must be made within a specific context.

This being so, there is nothing in the circumstances of this case which compels a conclusion that an unreasonable search occurred. What was done was reasonable and within the limits set by good judgment and fairness.

The Court of Appeals is reversed and the conviction reinstated.

WILLIAMS, FITZGERALD, and RYAN, JJ., concurred with COLEMAN, C.J.

LEVIN, J. *(dissenting).* The issue is whether incriminating information about the identification number of a 1969 Cadillac and a temporary driver's license should be suppressed.

The Court holds that

(i) "[T]he officers were *justified in concluding* that the defendant was 'misrepresent[ing] the iden-

---

[10] *People v Parisi,* 393 Mich 31; 222 NW2d 757 (1974).

tity of a motor vehicle' in their presence" and therefore properly seized the automobile as an incident of an arrest for the misdemeanor of "conceal[ing] or misrepresent[ing] the identity of a motor vehicle" "by removing or defacing" or "by replacing" a serial number, and accordingly had the right to drive it to the police station where an expert crawled under it and learned the hidden identification number. (Emphasis supplied.)

(ii) Alternatively, there is no expectation of privacy in a vehicle identification number (VIN) and, therefore, the underside of the automobile could have been examined at the gas station where Brooks was detained by the police, and it was also proper to examine it at the police station;

(iii) Upon such examination at the police station and discovery that the automobile was stolen, there was probable cause for a felony arrest for receiving or concealing stolen property valued at more than $100. It was, therefore, proper to require Brooks, as part of the booking procedure, to turn over his personal possessions. A folded piece of paper, found in his clothing, which appeared to the officer to be a temporary driver's license, was subject to examination (unfolding) as part of the booking procedure. Alternatively, there is no expectation of privacy in a driver's license, and therefore it was subject to examination at the police station without probable cause. If there is an expectation of privacy, there was probable cause to search (unfold) the license because it reasonably appeared to be evidence of the felony for which Brooks had been arrested; because of exigent circumstances a warrant was not required to proceed with a probable-cause-based search.

We dissent because

(i) An officer is not authorized to arrest for a

misdemeanor without a warrant unless it is committed "in his presence". The "in his presence" requirement is not satisfied by probable cause or the linguistic equivalent stated by the Court in explaining its disposition of this case, "justified in concluding". Nor is "concealing or misrepresenting the identity of a vehicle" an offense; the offense is concealing or misrepresenting its identity "*by* removing or defacing" or "*by* replacing" a serial number. The officers did not observe removal, defacing or replacing; the offense did not occur in their presence. Brooks was not subject to a warrantless arrest for that misdemeanor.

(ii) The analysis that there is no expectation of privacy in a VIN and therefore examination of a VIN does not constitute a search supports the admission in evidence of information not within the plain view doctrine because the information was not "inadvertently" discovered, *e.g.,* where the information was obtained as a result of opening the door of or crawling under the automobile. That analysis does not, however, justify seizure of an automobile for the purpose of conducting such an examination.

(iii) The additional information obtained upon examination of the underside of the automobile at the police station was a result of its seizure at the gas station. The seizure was not justified as an incident of a valid misdemeanor arrest (see [i], *supra).* Probable cause to arrest Brooks for receiving or concealing stolen property could not be based on information obtained as a result of such an unjustified seizure. The police did not consequently have the authority to require Brooks to turn over his personal possessions, revealing the temporary driver's license. Assuming that the license was properly revealed as a result of a book-

ing procedure, there was no need, as part of that procedure, to examine (unfold) it. There is an expectation of privacy in a driver's license except in those circumstances ·specifically provided by statute. Assuming probable cause to search (unfold) the license, since the police had physical possession of the license there were no exigent circumstances justifying its search without a warrant.

We would affirm the reversal of Brooks' conviction of receiving or concealing stolen property and remand for a new trial.

I

In the course of an investigation of a stolen car ring, state police officers were watching a new 1972 Continental Mark IV. They knew that a vehicle identification number on that car was counterfeit. They observed the Continental and two other automobiles leave a hotel together. The three cars, the Continental, a 1969 Cadillac, and a Ford Maverick, had been parked at the hotel at different times. The cars proceeded together to a gas station.

At the gas station a uniformed officer asked Brooks, who was driving the Cadillac, for his driver's license and car registration. He produced a driver's license in his own name and a registration in the name of another person. An officer checked the dashboard-mounted VIN. Although the VIN matched the number on the registration, two of the numerals on the VIN plate were out of alignment. The officer told Brooks that they desired a further check on the car's ownership. An officer drove the Cadillac, with Brooks as a passenger, to the police station.

At the police station, an expert in vehicle identification examined the dashboard VIN plate and concluded that it was not the original factory-mounted plate. The expert crawled under the car to check identifying numbers. The numbers did not match the number on the dashboard and a computer check of the frame number revealed that the Cadillac had been stolen. Brooks was then arrested for receiving or concealing stolen property.

Brooks was told to turn over his personal possessions. A folded piece of paper, which appeared to be a temporary driver's license, was observed by the officer in one of his socks. The officer unfolded it and discovered that it was a license issued to another person.

The Court of Appeals, one judge dissenting, reversed Brooks' conviction on the ground that the information obtained upon examination of the underside of the Cadillac and unfolding the temporary driver's license should have been suppressed, and remanded to the trial court.

II

The automobile was not subject to seizure at the gas station as an incident of arrest.

While the statute authorizes warrantless arrests, under certain circumstances, for *felonies* not committed in the officer's presence, a warrantless arrest for a *misdemeanor* is authorized only when the misdemeanor is committed in the *officer's presence.*[1]

The people contend that Brooks was lawfully arrested without a warrant for the misdemeanor

[1] See MCL 764.15; MSA 28.874; *People v Dixon,* 392 Mich 691, 696; 222 NW2d 749 (1974).

of concealing or misrepresenting the identity of a motor vehicle "*by* removing or defacing" or "*by* replacing" a serial number. (Emphasis supplied.) The statute provides:

"Any person who shall conceal or misrepresent the identity of a motor vehicle or of any mechanical device, *by* removing or defacing the manufacturer's serial number or the engine or motor number on such motor vehicle, or *by* replacing any part of such motor vehicle or mechanical device bearing the serial number or engine or motor number thereof if any, with a new part, upon which the proper serial number or engine or motor number has not been stamped, shall be guilty of a misdemeanor." MCL 750.415; MSA 28.647. (Emphasis supplied.)

The people further contend that the officer had prima facie evidence that Brooks had committed the misdemeanor because the statute further provides that possession of a vehicle with an "altered" number is prima facie evidence that the possessor violated the statute:

"In all prosecutions under this section, possession by any person of any motor vehicle, or of any mechanical device with the manufacturer's serial number or the engine or motor number removed, defaced, destroyed or altered or with a part bearing such number or numbers replaced by one on which the proper number does not appear, shall be prima facie evidence of violation of the provisions of this section." MCL 750.415; MSA 28.647.

The Court agrees, saying "[i]t is a misdemeanor to conceal or misrepresent the identity of a motor vehicle by using certain devices and it is prima facie evidence of such an offense to be in possession of a car with an altered identification number".

## A

A police officer is authorized by statute to make a warrantless arrest for "any felony or misdemeanor committed *in his presence* [emphasis supplied]".[2]

In those situations where an arrest warrant might be constitutionally required,[3] exigent circumstances may indeed justify an officer, otherwise authorized to make an arrest, to arrest without a warrant. The statute specifically defines the extent of an officer's powers to arrest without a warrant. Apart from a recent amendment referred to in the next subdivision of this opinion, under this statute an officer has no power to arrest for a misdemeanor unless it is committed in his presence.

Exigency of the circumstances does not bear on whether the offense was committed "in his presence".

## B

This Court has stated and restated that a warrantless arrest for a misdemeanor may not be made on probable cause.[4] An officer may not make a warrantless arrest for a misdemeanor unless he

---

[2] MCL 764.15; MSA 28.874.

[3] The Fourth Amendment does not require a warrant for a *felony* arrest on probable cause in a public place during the daytime. *United States v Watson,* 423 US 411; 96 S Ct 820; 46 L Ed 2d 598 (1976).

[4] See *Quinn v Heisel,* 40 Mich 576, 578 (1879); *People v Kuntze,* 371 Mich 419, 427; 124 NW2d 269 (1963); *Pinkerton v Verberg,* 78 Mich 573, 585; 44 NW 579 (1889); *Larson v Feeney,* 196 Mich 1, 4; 162 NW 275 (1917); *Odinetz v Budds,* 315 Mich 512, 517; 24 NW2d 193 (1946); *People v Bartz,* 53 Mich 493, 495; 19 NW 161 (1884); *People v McLean,* 68 Mich 480, 482; 36 NW 231 (1888); *In the Matter of Way,* 41 Mich 299, 304; 1 NW 1021 (1879).

In *People v Bartz, supra,* the Court held that the offense was committed in the officer's presence when the offender was in the officer's sight when the offense was committed and at all times

"actually sees the offense which constitutes the misdemeanor".[5]

Adherence to these principles in drunk driving cases[6] prompted the Legislature recently to amend this statute to provide for arrest on probable cause of a drunk driver involved in an accident.[7] This limited exception to the "in his presence"[8] requirement underscores that warrantless arrests for misdemeanors may not generally be made on probable cause.

## C

The Penal Code does not provide that mere

thereafter during the pursuit until he was arrested although, because it was dark, he could not be "distinctly seen or discerned" when the offense was committed.

In *People v Dixon, supra,* p 696, the Court held that while observations by victims or informers could not supplement the officer's observations to satisfy the "in his presence" requirement, observations by officers not at the scene who were part of a "police team" could be relied on by the arresting officer to satisfy the "in his presence" requirement. In *Dixon* the officers collectively observed all the elements of the crime being committed, although no one officer observed all the requisite acts.

[5] *Ross v Leggett,* 61 Mich 445, 449; 28 NW 695 (1886). See also *People v Bartz, supra.*

[6] See *People v Burdo,* 56 Mich App 48, 51; 223 NW2d 358 (1974); *Gallagher v Secretary of State (On Rehearing),* 59 Mich App 269, 272; 229 NW2d 410 (1975).

[7] MCL 764.15; MSA 28.874, was amended by 1978 PA 384 (without immediate effect), approved July 27, 1978, to add a new subdivision (h) authorizing warrantless arrest,

"[w]hen the peace officer has reasonable cause to believe that the person was, at the time of an accident, the driver of a motor vehicle involved in the accident and was driving the vehicle upon a public highway of this state while under the influence of intoxicating liquor."

Similarly, see MCL 335.351; MSA 18.1070(51), authorizing an arrest on "reasonable cause" to believe that the defendant violated the Controlled Substances Act if the violation is "punishable by imprisonment for 1 year or more", which would include some misdemeanors.

[8] Subdivision (a) of MCL 764.15; MSA 28.874 was amended by 1978 PA 384 to read as follows: "When a felony or misdemeanor is committed in the peace officer's presence."

possession of a vehicle with an altered identification number is an offense. Nor does it proscribe concealing or misrepresenting the identity of a vehicle. Both altering *and* concealing or misrepresenting are essential elements. The offense is concealing or misrepresenting the identity of a motor vehicle *"by* removing or defacing" or *"by* replacing" (emphasis supplied) a serial number; the officers did not observe removing, defacing or replacing and, accordingly, the offense did not occur in their presence.

At the gasoline station, an officer observed only that the identifying numbers of the dashboard VIN were out of alignment. He did not observe the defendant "remove or deface" or "destroy" or "alter" or "replace" a number. Although he may have surmised that someone, perhaps Brooks, at some time had altered the numbers, the requirement that the crime be committed in the officer's presence was not thereby satisfied.

The "prima facie evidence" provision of the statute, applicable where a serial number has been "removed, defaced, destroyed or altered or * * * replaced", is designed to assist a prosecutor in sustaining his burden of proof and of jury persuasion. It is doubtful whether it was also meant to assist the police and has application before commencement by a prosecutor of a prosecution.

Be that as it may, the validity of a warrantless arrest, search or seizure depends on the information known to the officer at the time he acts. At the gasoline station the officer did not know, and the people *do not even claim* that he had probable cause to believe, that a part of the automobile bearing a manufacturer's serial number had been "altered". He therefore did not *at that time* have the requisite basis for invoking the "prima facie evidence" provision of the statute.

To invoke this provision of the statute in a court of law, a prosecutor would be required to produce evidence tending to show that the part had in fact been altered, not merely probable cause to believe that it had been altered. This provision of the statute cannot be invoked by an officer on a showing not claimed to be even probable cause.

The Court states that the officers had observed that the VIN "had been *altered* [emphasis supplied]" and on that basis invokes the "prima facie evidence" provision. The officer did not, however, testify that the VIN had been "altered". He said, rather, that "I observed that two numbers appeared to be *out of line* with the rest." The Court does not state the standard by which it decides that the officer knew that the VIN was altered and thus does not indicate whether it even applied as high a standard as probable cause in reaching that decision.

More fundamentally, "prima facie evidence" arising from evidence that an offense *has been* committed, like evidence constituting probable cause that an offense *has been* committed, does not transform an offense that *has been* committed into one committed in the officer's *presence.*

The issue posed by a warrantless arrest for a misdemeanor is not whether there is prima facie evidence or even probable cause to believe that the defendant at some time committed the offense, or whether "[t]he officers were *justified* in *concluding* that the defendant [emphasis supplied]" was committing the offense in their presence, but whether the defendant *committed* the crime in the officer's *presence.* Because removing, defacing or replacing did not occur in the officer's presence, Brooks did not commit the offense in the officer's presence and was not subject to arrest without a warrant

for the misdemeanor of concealing or misrepresenting the identity of a vehicle *"by* removing or defacing" or *"by* replacing" a serial number.

Just as the Court fails to state the standard by which it decides that the officer who saw the VIN "out of line" knew it was "altered", it does not state the standard by which it determines that the officer was "justified in concluding" that the crime was being *committed* in his *presence* and therefore it does not indicate, again, whether the standard is at least as high as the probable cause standard. Whether the Court speaks in terms of *justification* for concluding or *cause* or *reason* for concluding, it is basing its decision not on what occurred in the officer's presence but, rather, on what he has cause/reason/justification to conclude/believe.

The argument based on difficulty in enforcing the statute because acts of alteration do not ordinarily take place in an officer's presence, overlooks that countless misdemeanors are acts which are usually or often committed in secrecy. The Legislature has decided that where a misdemeanor is involved the invasion of privacy involved in an arrest is justified only when an independent magistrate authorizes a warrant or when the offense is actually observed by an officer. The recent limited exception for drunk driving cases emphasizes that the Legislature has not been persuaded to enact a general relaxation of standards because the "in his presence" requirement causes problems in apprehending misdemeanants.

### III

The people alternatively contend that the information obtained upon the examination of the underside of the automobile at the police station is

not subject to suppression because an inspection of a VIN is not a search.

The analysis that an inspection of a VIN does not constitute a search,[9] because there is no expectation of privacy in a VIN, was developed in cases where i) the defendant had been lawfully arrested before the vehicle was seized,[10] or ii) there was probable cause to examine the VIN,[11] or iii) the examination took place in a public place[12] or in a private place with the permission of the owner of that place[13] without seizing it or detention of an occupant of the automobile or any other person.

That analysis supports the admission in evidence of information obtained as the result of close scrutiny of an automobile that would not be admissible under the plain view doctrine because "the discovery of evidence in plain view must be inadvertent". *Coolidge v New Hampshire,* 403 US 443, 469; 91 S Ct 2022; 29 L Ed 2d 564 (1971). The no-*search* analysis does not, however, permit the police to *seize* an automobile to examine it.

The Search and Seizure and Warrant Clauses protect against unjustified seizures as well as un-

---

[9] For cases holding that an inspection of a VIN constitutes a search, see *United States v Powers,* 439 F2d 373 (CA 4, 1971) (see fn 19, *infra);* and *Simpson v United States,* 346 F2d 291 (CA 10, 1965).

Courts that have held that an "inspection" of a VIN is not a search have nevertheless agreed that such inspections are only permissible when surrounding circumstances give rise to "legitimate reasons" for checking the identity of the automobile. See, *e.g., United States v Ware,* 457 F2d 828, 829-830 (CA 7, 1972); *United States v Johnson,* 413 F2d 1396, 1399 (CA 5, 1969); *United States v Self,* 410 F2d 984, 986 (CA 10, 1969); *Cotton v United States,* 371 F2d 385, 393 (CA 9, 1967); *People v Wolf,* 60 Ill 2d 230; 326 NE2d 766 (1975).

[10] See *United States v Brown,* 535 F2d 424, 427-428 (CA 8, 1976); *United States v Graham,* 391 F2d 439, 442 (CA 6, 1968); *Cotton v United States, supra,* p 392.

[11] See *United States v Zemke,* 457 F2d 110, 113 (CA 7, 1972).

[12] See *United States v Wood,* 500 F2d 681 (CA 5, 1974).

[13] See *United States v Polk,* 433 F2d 644 (CA 5, 1970); *United States v Johnson, supra,* aff'd en banc, 431 F2d 441 (CA 5 1970).

justified searches.[14] Whether the examination of a VIN is a search or not, the seizure itself must be justified where the vehicle is seized before it is examined.

In cases such as *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), and *Cardwell v Lewis,* 417 US 583; 94 S Ct 2464; 41 L Ed 2d 325 (1974), where it was held permissible to search an automobile at a police station because it could have been searched where it was stopped, there was probable cause to *search* the automobile where it was stopped[15] and the occupants were detained.[16]

---

[14] See *Cardwell v Lewis,* 417 US 583, 592-593, 597; 94 S Ct 2464; 41 L Ed 2d 325 (1974); *Coolidge v New Hampshire,* 403 US 443, 466, 468; 91 S Ct 2022; 29 L Ed 2d 564 (1971); *United States v Brown, supra,* pp 427-428.

[15] Similarly, see *United States v Zemke, supra,* p 114, where, additionally, the Court found, in contrast with the instant case (see second paragraph of fn 17, *infra),* that the motorcyclists "agreed" to accompany the officer to a service station, not a police station, where the further examination took place.

[16] In *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970), there was probable cause to believe that evidence of the crime was in the automobile and in *Cardwell v Lewis,* 417 US 583; 94 S Ct 2464; 41 L Ed 2d 325 (1974), to believe that the automobile itself was evidence of the crime. In *Chambers* the occupants were arrested at the scene on probable cause. There were no occupants in *Cardwell,* but the owner had driven the automobile to the police station where, after an interview, he was arrested and the automobile, in a nearby parking lot, was impounded and removed to the police parking lot.

The Court, in *Chambers, supra,* p 52, said:

"For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. *Given probable cause to search,* either course is reasonable under the Fourth Amendment." (Emphasis supplied.)

As stated by the Court in *Coolidge v New Hampshire, supra,* pp 463-464:

"*Chambers, supra,* is of no help to the State, since that case held only that, where the police may stop and search an automobile under *Carroll [v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925)], they may also seize it and search it later at the police station. Rather, this case is controlled by *Dyke v Taylor Implement Manufacturing Co* [391 US 216; 88 S Ct 1472; 20 L Ed 2d 538 (1968)]. *There the police*

Assuming, *arguendo,* that it was "proper", by reason of no-search analysis, "to *compare"* the hidden VIN with the dashboard VIN and even that there was "probable cause to *check* the true VIN" (emphasis supplied), *Chambers v Maroney* and *Cardwell v Lewis* are nevertheless not in point absent probable cause to *search* or *seize.* If "probable cause" to "compare" or "check" satisfied Fourth Amendment requirements the no-search analysis would not have developed. Moreover, it warps the language to speak of "probable cause" to engage in the assertedly no-search activities of "comparing" and "checking".

In the instant case the people do not contend that there was probable cause to *search* the automobile at the gas station, or to *seize* it except as an incident of arrest for a misdemeanor (see Part II, *supra).*[17] Although the automobile "was the primary evidence of the crime", it was not subject to seizure unless there was probable cause to seize it *at the time* it was seized.

Absent probable cause to search the automobile at the scene or to seize and remove it to the police station, information obtained upon examination— whether a "search" or not—at the police station should be suppressed.[18]

A different question would be presented if, instead of seizing the automobile and removing it to

---

*lacked probable cause to seize or search the defendant's automobile* at the time of his arrest, and this was enough by itself to condemn the subsequent search at the station house." (Emphasis supplied.)

[17] Nor do they claim that there was probable cause to arrest Brooks for the felony of receiving or concealing stolen property until after the expert in vehicle identification numbers had examined the automobile at the police station.

In response to the question whether they would have "let" Brooks "go about his business", an officer said "[n]o, I don't believe we would have".

[18] See *Dyke v Taylor Implement Manufacturing Co,* 391 US 216; 88 S Ct 1472; 20 L Ed 2d 538 (1968).

a police station together with its occupant, the officers, for substantial and articulable reasons, had merely detained the automobile for a brief time at the gas station and, in the presence of the occupant, opened a door to check a serial number on the doorpost or raised the hood or crawled under it to check serial numbers. See *United States v Powers,* 439 F2d 373, 375-376 (CA 4, 1971).[19]

## IV

· The remaining issue is whether the driver's license discovered in the defendant's sock was the product of an improper search or seizure. The police claim that it was proper booking procedure for the police to require Brooks to turn over his personal belongings and for them to examine (unfold) the license, and therefore the discovery of the incriminating nature of the driver's license was not, again, the result of a search. The Court

---

[19] In *United States v Powers, supra,* p 376, the Court said:

"[T]he legality of the search cannot be predicated on the 'inarticulate hunches' or subjective 'good faith' of the officer. *Terry v Ohio,* 392 US 1, 22; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Instead it should be tested by the objective standard stated in *Terry,* 392 US at 22:

" '[W]ould the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?'

"This standard can be met, we conclude, when the officer has a legitimate ground for checking the identification number. *Cf. Cotton v United States,* 371 F2d 385, 393 (CA 9, 1967) (alternative holding). Requiring more, such as probable cause, is unjustified because of the minimal invasion of privacy resulting from search of the parts of the vehicle where the identification numbers are placed, the quasi-public nature of the numbers, and the frequent need to check them expeditiously before the car is moved. Requiring less, or refusal to treat the inspection as a search, could thwart rights secured by the Fourth Amendment by subjecting the owners of vehicles to unrestrained governmental intrusion."

But see *United States v Brignoni-Ponce,* 422 US 873, 882; 95 S Ct 2574; 45 L Ed 2d 607 (1975) ("any further detention or search must be based on consent or probable cause").

agrees, and adds that examination of a driver's license is not a search *per se;* if it is, there was probable cause to search (unfold) the license because it reasonably appeared to be evidence of the felony for which Brooks had been arrested. Additionally, the Court declares that exigent circumstances made it unnecessary to obtain a warrant for a probable-cause-based search.

*A*

If one posits that Brooks was lawfully arrested, then examination and seizure without a warrant of the temporary driver's license as evidence of the offense might be justified on the authority of *United States v Edwards,* 415 US 800; 94 S Ct 1234; 39 L Ed 2d 771 (1974), and *United States v DeLeo,* 422 F2d 487, 491 (CA 1, 1970). In those cases evidence which the police had reason to believe related to the offense for which the defendant had been *lawfully* arrested was seized without a warrant from their persons a number of hours after they had been arrested—the clothing that defendant was wearing in *Edwards,* and a safe deposit envelope and key in *DeLeo..*

In *Edwards* the Court concluded its opinion upholding the search and seizure in that case with the following observation:

"In upholding this search and seizure, we do not conclude that the Warrant Clause of the Fourth Amendment is never applicable to post arrest seizures of the effects of an arrestee. But we do think that the Court of Appeals for the First Circuit captured the essence of situations like this when it said in *United States v DeLeo,* 422 F2d 487, 493 (1970) (footnote omitted):

" 'While the *legal* arrest of a person should not destroy the privacy of his premises, it does—for at least a

reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.'" *United States v Edwards, supra,* pp 808-809 (emphasis supplied).

Brooks was not *legally* arrested; he was not subject to arrest at the gasoline station for a misdemeanor not committed in the officer's presence, he was not subject to arrest at the police station on the basis of information obtained as a result of an unjustified seizure of the automobile.

The driver's license, therefore, was not subject to seizure as an incident of a *lawful* arrest at the police station.

Assuming, *arguendo,* that there was probable cause to search (unfold) the license (that, as stated by the Court, "it was reasonable" to unfold the license) because, when it was revealed in the booking procedure, it appeared to be evidence of the felony for which Brooks had been arrested, there were no exigent circumstances dispensing with the need to obtain a warrant; the police had physical possession of the license. *Edwards* indicates that the Warrant Clause continues to apply to post-arrest searches and seizures where the defendant was not *lawfully* arrested.

"Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." *Chambers, supra,* p 51:

"[W]hen no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority. Respondents were therefore entitled to the protection of the Warrant Clause with the evaluation of a neutral magistrate, before their privacy interests in the con-

tents of the footlocker [which the police had probable cause to believe contained contraband] were invaded." *United States v Chadwick,* 433 US 1, 15-16; 97 S Ct 2476; 53 L Ed 2d 538 (1977).

## B

There is, contrary to the Court's dictum, an expectation of privacy in a driver's license except in those circumstances specifically provided by statute. An officer could not, for example, under existing precedent, require a pedestrian or householder to exhibit his driver's license. A driver's license, although issued by state government, is not subject to examination by police officers at their will.

## C

Since the folded paper was not subject to examination or seizure as an incident of a lawful arrest, or, without a warrant, on probable cause to search, or on the ground that there is no expectation of privacy in a driver's license, the question remaining is whether as part of the booking procedure—without regard to the legality of Brooks' arrest—the police were justified in examining (unfolding) the license.

In *People v Robinson,* 388 Mich 630; 202 NW2d 288 (1972), the police illegally arrested the defendant at the police station on the complaint of a citizen who had forced the defendant to accompany him at rifle point. A lighter, bearing the initials "J. T.", stolen from another person in an incident unrelated to the citizen's complaint, was noticed by an officer when the defendant removed articles from his pockets during the booking proce-

dure. The Court declared that the lighter was not discovered as a result of a search.

Here the officer saw a folded piece of paper in the defendant's sock and removed the paper from the sock. He testified that the paper in its folded state appeared to be a temporary driver's license. He unfolded the paper and learned that it was indeed a temporary driver's license and that it had been issued to another person. This was more than a casual, inadvertent observation, as in *Robinson,* of an article and its incriminating character (the initials) in plain view.[20]

In contrast with *Robinson,* the police here did not simply inventory property for safekeeping or remove contraband or weapons from the defendant's person. They examined (searched) the temporary driver's license to determine *more* than was learned on its inadvertent viewing. The discovery of the identity of the licensee appears to have been part of the ongoing investigation initiated at the gasoline station by the police who suspected that Brooks was involved in a stolen car ring. The Court acknowledges as much, saying that the seizure of the license was justified because the officer had, in light of Brooks' furtive behavior, reason "to believe the folded paper was evidence of the crime".

The exigencies of jail administration justify the booking procedure exception and the resulting invasion of the privacy of persons whether legally

---

[20] The concurring opinion in the Court of Appeals noted:

"A different question would be presented if the record showed that the information which led the police to connect the defendant with the unsolved robbery was only discovered when an officer closely examined the article and was not discovered during a casual observation of an article in plain view." *People v Henry Robinson,* 37 Mich App 115, 120; 194 NW2d 537 (1971) (LEVIN, J., concurring).

See *People v Moore,* 391 Mich 426, 434-435, fn 5; 216 NW2d 770 (1974).

arrested or not. The scope of the exception is defined by its justification, the exigencies of jail administration.

Jail administration does not require close scrutiny of the personal belongings of the arrested person. There is no need to read papers and documents to inventory them.

Just as a wallet or a purse should not be opened, neither should loose papers be examined for their contents. Where personal papers are involved, the privacy interest in their contents requires that jailers and police officers exercise the utmost circumspection in their inventorying to avoid perusal of their contents.

Moreover, the Court is excessively indulgent of the prosecution in making curative assumptions about the details of this police department's booking procedures without any evidence, record or otherwise, in that regard. The prosecutor, not the defendant, has the burden of proof on all suppression issues; it would be especially appropriate to require him to discharge that burden where he justifies police conduct on police procedures of which the defendant may have little or no information.

Many, perhaps most, police departments do not itemize possessions, even currency. Everything is put in a bag, box or envelope which is then closed and sealed. Apart from whether the exigencies of jail administration justify preparation of an itemized written inventory, there is no reason to suppose on this record that the Southfield Police Department routinely prepared such an inventory.

Assuming with the Court, without record evidence, that an itemized inventory of Brooks' personal possessions was about to be made, the police could have adequately protected themselves

against a claim that the driver's license was a negotiable instrument by recording that it was a driver's license, as it appeared to them to be. They might even have asked Brooks to so acknowledge, by asking him to sign an itemized inventory—in the event he refused or disputed the accuracy of the inventory they might then have unfolded the license; there was no need eagerly to unfold the license as part of the booking procedure.

Nor can the unfolding of the license be justified on the strained theory that it was reasonable to unfold it to look for "small but dangerous objects, for drugs, or for other contraband". Having taken possession of the folded license, the officer was no longer endangered by any object secreted in it.

Absent reason to believe, and there is no suggestion of any, that the folded license contained any dangerous object, weapons or contraband, there was no justification for a search with or without a warrant, and because the officer had possession of the folded license there were no exigent circumstances justifying a warrantless search.

Examination (unfolding) of the folded license was not justified as an incident of a lawful arrest at the police station, or because there is no expectation of privacy in a driver's license. Nor was it legitimated by the exigencies of jail administration and attendant appropriate booking procedures.

We would affirm the Court of Appeals.

KAVANAGH, J., concurred with LEVIN, J.

BLAIR MOODY, JR., J. *(to affirm).* I agree with the result and concur in the analysis set forth in parts II and III of Justice LEVIN's dissenting opinion. Specifically, I agree that the defendant was not subject to a warrantless arrest for the specific misdemeanor and, therefore, the seizure of the

Cadillac was not justified as incident to a valid misdemeanor arrest. Accordingly, I would affirm the reversal of defendant's conviction and remand for a new trial.

It is not necessary to reach part IV and the question of whether the driver's license discovered in the defendant's sock was the product of an improper search or seizure. Since the incarceration of the defendant was not justified, the inventory search which produced the temporary driver's license was invalid.