PEOPLE v WALKER

1. CONSTITUTIONAL LAW—STOPS—ARREST—PROBABLE CAUSE—STREET INVESTIGATION.

Not every encounter between a law enforcement official and a private citizen is a "stop" for Fourth Amendment purposes; the law recognizes an important factual and constitutional distinction between arrests based on probable cause and street investigations which may ultimately lead to arrests (US Const, Am IV).

2. ARREST—EVIDENCE—SUPPRESSION—SEARCHES AND SEIZURES—CONSTITUTIONAL LAW.

The manner in which a defendant was placed under arrest does not require evidence found on his person to be suppressed as having been obtained in violation of his Fourth Amendment rights where he was observed by police slumped over the steering wheel of his car at 4:30 a.m., the police aroused him and asked for his driver's license, they ascertained that he had been using cocaine, then conducted a warrant check and discovered an outstanding warrant for non-support, and arrested the defendant on that charge (US Const, Am IV).

3. SEARCHES AND SEIZURES—PERSONAL EFFECTS—CUSTODIAL SEARCH—OBSERVATION OF OFFICERS.

Information obtained by a police officer through the exercise of his senses as he observes articles being removed by a prisoner

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur 2d, Arrest §§ 26, 28.

[3-5] 68 Am Jur 2d, Searches and Seizures §§ 92, 93.

Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search. 19 ALR3d 727.

Constitutionality of searching premises without search warrant as incident to valid arrest—Supreme Court cases. 23 L Ed 2d 966.

[5] 68 Am Jur 2d, Searches and Seizures § 83.

[6] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.

[7] 21 Am Jur 2d, Criminal Law § 494.

from his pockets and transferred to a receptacle for safekeeping is not information obtained as a result of a search.

4. Searches and Seizures—Constitutional Law—Jailhouse Searches—Lawful Arrest—Requirement of Warrant—Exceptions.

A search made at the jailhouse after a lawful arrest is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that amendment (US Const, Am XIV).

5. Searches and Seizures—Inventory Searches—Jailhouse Searches—Search Incident to Arrest—Personal Effects—Custody.

Jailhouse inventory searches are viewed in Michigan as incident to incarceration and not as incident to the arrest, thus the removal of a tinfoil packet from its hiding place in a defendant's hair, done during the course of a customary procedure requiring the arrestee to remove and deposit his personal effects with custodial officials upon his incarceration, was proper; and a subsequent opening of the packet by an officer does not remove the search from the protective scope of the jailhouse inventory exception to the warrant requirement of the Fourth Amendment since it would be naive and pointless to assume that law enforcement officials may store an arrestee's personal effects without first determining what it is they are inventorying (US Const, Am IV).

6. Drugs and Narcotics—Heroin—Possession—Usable Amount.

Possession of approximately 6.3 grains of heroin is clearly a usable amount sufficient to sustain a defendant's conviction for possession of heroin.

7. Criminal Law—Instructions to Jury—Lesser Included Offenses—Unanimous Agreement.

An instruction to the jury that they find a defendant innocent of the offense charged before proceeding to consideration of the lesser included offenses was not coercive or unduly restrictive where the language of the instruction did not require unanimous agreement on the defendant's innocence of the offense charged before the lesser offenses could be considered.

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 January 8, 1975, at Lansing. (Docket No. 19185.) Decided February 12, 1975.

Lorring L. Walker was convicted of possession of heroin. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *Richard G. Bensinger,* Assistant Appellate Counsel, for the people.

*Joseph B. Szeremet,* Assistant State Appellate Defender, for defendant.

Before: Danhof, P. J., and McGregor and Walsh, JJ.

Walsh, J. The defendant was found guilty by a jury of the offense of possession of heroin, contrary to MCLA 335.341(4)(a); MSA 18.1070 (41)(4)(a), and was sentenced to serve 2 to 4 years in prison. He appeals as of right and asserts four assignments of error. None requires reversal.

On November 26, 1972, at about 4:50 a.m. two police officers driving on Eight Mile Road in Oak Park observed the defendant slumped over the wheel of his car, which was parked with the motor running in a parking lot adjacent to a motel. The officers pulled into the lot, approached the vehicle and aroused the defendant, who appeared to be either unconscious or asleep. The officers questioned the defendant briefly about what he was doing there and also asked him to produce an operator's license.

The defendant was questioned further as to the identity of a white substance observed around his nostrils. In response defendant indicated that he had been snorting cocaine earlier in the day.

The officers then took the operator's license and utilized the LEIN (Law Enforcement Information Network) computer system to determine if there

were any outstanding warrants for the defendant's arrest. The record check revealed an outstanding warrant for non-support and the defendant was arrested on that charge and immediately transported to the Oak Park police station.

During the course of the booking procedure at the police station the defendant was subjected to a routine inventory search prior to being placed in the cell block. As he was pulling his shirt over his head, one of the officers observed a shiny piece of tinfoil folded into the defendant's hair. The tinfoil was seized and opened up by one of the police officers and found to contain a white powder substance later identified as heroin. The amount was determined to be approximately 6.3 grains (.4 grams).

The defendant first contends that the initial police contact violated his Fourth Amendment rights and that any evidence obtained subsequent to the parking lot encounter, including the tinfoil packet found at the police station, should therefore have been rendered inadmissible. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961); *People v LaGrange,* 40 Mich App 342; 198 NW2d 736 (1972).

The defendant refers us to a long series of state and Federal decisions in support of his general contention that the behavior which aroused the police officer's suspicion did not warrant investigatory intrusion in the form of a record check which eventually revealed the existence of the non-support warrant for which he was arrested.

However, not every encounter between a law enforcement official and a private citizen is a "stop" for Fourth Amendment purposes. The law recognizes an important factual/constitutional distinction drawn between arrests based on probable

cause and street investigations which may ulti-
mately lead to arrests. See *People v Rivers,* 42
Mich App 561, 567; 202 NW2d 498 (1972).

With this distinction in mind we proceed to
analyze the police activity in the instant case.
After observing a human form slumped over the
steering wheel of an automobile (which was
parked in a hotel parking lot at 4:30 in the morn-
ing with the motor running) the officers' first step
was to approach the vehicle and arouse the de-
fendant. Next they asked him what he was doing
there and for his operator's license. When, in
response to police questioning, the defendant iden-
tified a white substance around his nostrils as
cocaine, the officers took the defendant's driver's
license and conducted a warrant check through
the LEIN system.

The action taken by the police officers here is,
for purposes of the Fourth Amendment, compara-
ble to the momentary police-community contact
approved in *People v Rivers, supra.* Quoting from
*United States v Lee,* 271 A2d 566 (DC, 1970), the
Court said:

" 'Revealed here is the kind of momentary contact
which is and must be recognized as necessary to a
sound police-community relationship and its commensu-
rate effective law enforcement.' " *Rivers, supra,* at pp
568–569.

The allegation made by defendant that the war-
rant check was utilized merely to gain some infor-
mation on which to base an arrest is entirely
meritless. A LEIN check is an unobtrusive investi-
gative tool employed by the police to retrieve
information regarding an individual's driving rec-
ord and to determine whether there are any out-
standing warrants for his arrest—all matters of

public record. As such, a LEIN check does not involve an unlawful disregard for individual liberties.

The next contention made by the defendant is that the tinfoil packet found by the police officers was obtained as a result of an illegal search. It is well established that "information obtained by a police officer through the exercise of his senses as he observes articles being removed by a prisoner from his pockets and transferred to a receptacle for safekeeping is not information obtained as a result of a search". *People v Henry Robinson,* 388 Mich 630, 632–633; 202 NW2d 288 (1972). See also *People v Terrance Carter,* 43 Mich App 735; 204 NW2d 703 (1972). But it is urged by the defendant that the opening of the tinfoil packet constituted a search for which a warrant was required.

Basic to every analysis of a search and seizure issue is the rule that warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions". *Coolidge v New Hampshire,* 403 US 443, 454–455; 91 S Ct 2022, 2032; 29 L Ed 2d 564, 576 (1971). And where a custodial search is preceded by a lawful arrest, this intrusion is "not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment". *United States v Robinson,* 414 US 218, 235; 94 S Ct 467, 477; 38 L Ed 2d 427, 441 (1973).

In Michigan, contrary to many other jurisdictions,[1] jailhouse inventory searches are viewed as incident to incarceration and not as incident to the

---

[1] *See* Annotation, *Modern status of rule as to validity of nonconsensual search and seizure made without warrant after lawful arrest as affected by lapse of time between, or difference in places of, arrest and search,* 19 ALR3d 727.

arrest. See *People v Dixon,* 392 Mich 691, 706–707; 222 NW2d 749 (1974). The distinction is not merely a semantic one. In the case at hand, for example, the removal of the tinfoil was done during the course of a "customary procedure" requiring the arrestee to remove and deposit his personal effects with custodial officials. See *People v Henry Robinson, supra.* Such a procedure, where the arrestee's belongings are properly inventoried and stored, is designed to prevent the introduction of weapons and contraband within the detention facility and is a protective measure for police and prisoner alike.

Such an examination and inventorying of an arrestee's personal effects which takes place at the police station and not at the scene of arrest—and at some time remote from the arrest—can hardly be justified under the traditional concept of being incident to the arrest. Here the legality of the seizure of the tinfoil packet rests upon a properly conducted custody search required for the safety of the prisoner and of law enforcement personnel.

The subsequent opening of the packet does not remove this particular search from the protective scope of the jailhouse-inventory exception to the warrant requirement. It would be naive and pointless to assume that law enforcement officials may store an arrestee's personal effects without first determining what it is they are inventorying.

It should be noted that in sustaining the validity of the instant search this Court is not unmindful of *People v Trudeau,* 385 Mich 276; 187 NW2d 890 (1971), *cert den* 405 US 965; 92 S Ct 1169; 31 L Ed 2d 240 (1972), and *United States v Edwards,* 415 US 800; 94 S Ct 1234; 39 L Ed 2d 771 (1974), which were not cases involving an inventory search of the type at issue here. Nor does *People v Dixon,*

*supra,* control here, since the defendant in that case was not lawfully in custody at the time of the search and since he had already been subjected to a weapons frisk at the scene of the arrest.

The defendant next asserts for the first time as error that the prosecution failed to prove possession of a usable amount of heroin and that his conviction should therefore be reversed on the authority of *People v Harrington,* 33 Mich App 548; 190 NW2d 343 (1971).[2] Even if the issue were properly preserved for appellate review, the contention is unrealistic in light of this Court's pronouncements in *People v Stewart,* 52 Mich App 477; 217 NW2d 894 (1974), and *People v Eugene Harris,* 43 Mich App 531; 204 NW2d 549 (1972). It is sufficient to note that the defendant here was found to have been in possession of approximately 6.3 grains (.4 grams) of heroin, which is clearly a usable amount sufficient to sustain his conviction for possession.

Finally the defendant maintains that the trial judge's instruction to the jury that they find the defendant innocent of the offense charged before proceeding to the lesser included offenses was coercive, unduly restrictive and therefore reversible error. *People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972), is cited in support of this contention.

The trial court instructed the jury as follows:

"So you will have these three charges to consider when you retire to your deliberations in the jury room. First, the charge—the initial charge—unlawful possession of narcotics. Second, attempted unlawful possession of narcotics. And third, use of narcotics."

\* \* \*

---

[2] *Lv den,* 385 Mich 775 (1971).

"To repeat, there is one of four possible verdicts in this case. First, that the Defendant is guilty as charged of possession—unlawful possession—of narcotics. If not that, second, he may be guilty of the included offense of attempted unlawful possession of narcotics. If not that, the third included offense, he may be guilty of use of narcotics. And the fourth possible verdict, of course, is not guilty.

"I will repeat. You have one of four possible verdicts. I'll start with not guilty first, just not guilty. Number 2, guilty of the main charge, unlawful possession of narcotics. If you find him not guilty of that, consider the included offenses; attempted unlawful possession of narcotics or use of narcotics."

This language, unlike that used in *Ray,* did not require unanimous agreement on defendant's innocence of the offense charged before the lesser offenses could be considered and was therefore entirely proper. *People v Robert Hall,* 56 Mich App 10; 223 NW2d 340 (1974); *People v James,* 51 Mich App 777; 216 NW2d 473 (1974).

Affirmed.