CAVANAGH, J.
(dissenting). Despite recognizing that a police officer must have a reasonably articulable suspicion that criminal activity is afoot before detaining a person, today’s majority incorrectly identifies the point at which defendant was seized to justify a detention based on suspicions formed after the detention occurred. Because defendant was seized without reasonable suspicion, and because the Fourth Amendment expressly prohibits using after-acquired suspicions to justify a seizure, Florida v JL, 529 US 266, 271-272; 120 S Ct 1375; 146 L Ed 2d 254 (2000), I respectfully dissent.
*36 The Search and Seizure Clause of both the United States Constitution and the Michigan Constitution[1] protects individuals against unreasonable searches and seizures conducted by governmental actors. Whren v United States, 517 US 806, 809-810; 116 S Ct 1769; 135 L Ed 2d 89 (1996); People v Shabaz, 424 Mich 42, 52; 378 NW2d 451 (1985). Before detaining an individual, a police officer must have a particularized and objective basis for suspecting criminal activity by the particular person detained. Shabaz, supra at 59. An “inchoate and unparticularized suspicion or ‘hunch’ ” is an insufficient basis for seizing a person. Terry v Ohio, 392 US 1, 27; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Rather, the officer must have at least “a particularized suspicion, based on an objective observation, that the person stopped has been, is, or is about to be engaged in criminal wrongdoing.” Shabaz, supra at 59. “As long as the person to whom questions are put remains free to disregard the questions and walk away,” there has been no Fourth Amendment violation. United States v Mendenhall, 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980). But at the moment that person is restrained, he is seized. Terry, supra at 16.
Generally, “ ‘a person has been “seized” within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.’ ” California v Hodari D, 499 US 621, 627-628; 111 S Ct 1547; 113 L Ed 2d 690 (1991), quoting Mendenhall, supra at 554. Where a seizure by show of authority is alleged, rather than a seizure by physical force, the test “is an objective one: not whether the citizen perceived that he was being ordered to restrict *37 his movement, but whether the officer’s words and actions would have conveyed that to a reasonable person.” Hodari D, supra at 628.
Interestingly, the majority concludes that defendant was not seized until the officers physically restrained defendant after he tried to walk away. But the majority ignores that a seizure can also occur by a police officer’s show of authority. The majority states, “When an officer approaches a person and seeks voluntary cooperation through noncoercive questioning, there is no restraint on that person’s liberty, and the person is not seized.” Ante at 33, citing Florida v Royer, 460 US 491, 497-498; 103 S Ct 1319; 75 L Ed 2d 229 (1983). I agree that the initial questioning and the officers’ request to see defendant’s identification were part of a consensual citizen-police encounter. But the majority fails to address the next critical event — the LEIN[2] check — and instead jumps to events that occurred while the LEIN check was in progress.
On the evening in question, Officer Geoffrey Spickard and his partner responded to an Ann Arbor housing complex after receiving a complaint about a large group of people drinking and being loud in the complex’s courtyard. When the officers arrived, they observed fifteen to twenty people engaged in those activities. Nonetheless, they bypassed those people and approached defendant and another gentleman who were sitting quietly on some steps and who were not drinking. According to Officer Spickard’s preliminary examination testimony, he approached these particular two gentlemen because he did not recognize them. At the suppression hearing, however, he testified that he approached them because he believed *38 defendant’s companion resided at the apartment connected to the steps on which he was sitting, and the officer wanted to ask him some questions about the gathering. Officer Spickard testified that while he was talking to the gentlemen, a woman opened the adjacent door, asked defendant who he was and why he was on her porch, and retreated inside.
Thus, according to Officer Spickard, he initially asked for defendant’s identification because he suspected that defendant might not belong at the complex, and he wanted to determine where defendant lived. Defendant voluntarily informed him that he did not live in the complex, and he voluntarily gave him his facially valid identification card. At that point, any suspicions the officers had about where defendant lived were resolved, and there was no need to detain defendant.[3] Of course, the officers were free to continue the consensual encounter by asking defendant additional questions, such as why he was there, but, instead, they confiscated the identification card and, without requesting permission, initiated a LEIN check.[4]
*39 The LEIN check in this case was not only nonconsensual, but it was more than a momentary detention.[5] A person “ ‘may not be detained even momentarily without reasonable, objective grounds for doing so ... .’ ” Shabaz, supra at 57, quoting Royer, supra at 498. When the trespass theory is discounted, as it should be,[6] even the majority can find no facts that support a finding that the officers had reasonable suspicion of criminal activity when the LEIN check was initiated.[7]
The situation that occurs when an officer asks for identification and a person produces it involves a question and a response, an exchange that can be fairly *40 characterized as a “consensual encounter” as that term is used in Fourth Amendment context. But here the officers’ next action did not involve a question to which defendant had the opportunity to choose to respond. The exchange had ceased. By confiscating defendant’s identification card and beginning an investigation, the officers turned the otherwise voluntary encounter into a detention. By skirting that issue entirely, the majority fails to correctly identify the point at which defendant was seized.
Using the objective test set forth in Hodari D, supra at 628, the focus must be on whether, when the LEIN check began, “the officer’s words and actions would have conveyed” to a reasonable person that he was being seized. “[T]he threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled” are some circumstances that suggest that a seizure has occurred. Mendenhall, supra at 554.
Here, two uniformed, armed police officers, who had already resolved their initial concern about defendant’s residence, nonetheless retained defendant’s identification card and initiated a LEIN check with no particularized, articulable basis for doing so.[8] The officers’ actions would have objectively conveyed to a reasonable *41 person that the person was not free to leave, and I cannot conceive of a reasonable person who would feel free to walk away under those circumstances.[9] The critical distinction between this and a consensual encounter is that defendant was no longer being asked questions he could refuse to answer.
Moreover, an officer’s subjective intent is relevant to the extent that it may have been conveyed to the defendant by the words or actions of the officer. Mendenhall, supra at 554 n 6. In the following testimony, Officer Spickard confirmed that defendant was not free to leave once he initiated the LEIN check:
Q. [.Defense counsel]: At the point that you approached Mr. Jenkins and asked him for his I.D., he was not free to leave at that point, correct?
A. [Officer Spickard]: That would be correct.
Q. And if he would have tried to run away, you would have run after him, correct?
A. That would be correct.
Q. And if he would have tried to run away, you would have stopped him?
A. That would be correct.
Q. And, in fact, as you testified on direct, you encouraged him throughout this whole encounter to stick around?
A. Correct.
*42 Q. Because you wanted to see what the results were of the LEIN check?
A. Correct.
Q. And he was never free to leave throughout that entire encounter?
A. I would characterize that as correct.
Q. And he was never able to get his I.D. back from you, correct?
A. I believe we maintained possession of his identification, yes.
Q. And if he had asked you for the I.D. back at that point, you would have said no?
A. Pending the results of the LEIN check, yes.
Officer Spickard was an experienced officer with a ten-year history with the Ann Arbor Police Department. It is reasonable to presume that these officers, by their conduct and by withholding defendant’s identification card, were effectively conveying to defendant that he was not free to leave.[10]
The officers could have easily avoided offending the Fourth Amendment. They could have extended the exchange by asking defendant if he had any warrants, thereby giving defendant an opportunity to answer “yes” or “no” or refuse to answer altogether. They could have then asked him if he minded if they checked. Again, defendant could have answered or refused to *43 answer. But despite the simplicity and legitimacy of this method, and the well-settled recognition that the police may approach people and ask noncoercive questions without needing constitutional justifications, today’s majority contravenes well-settled constitutional law by installing a rule by which an officer can approach a person, ask for identification, and run a warrant check without reasonable suspicion that criminal activity is afoot merely because that person is in a high-crime area. Indeed, it cannot be clearer that “[a]n individual’s presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime.” Illinois v Wardlow, 528 US 119, 124; 120 S Ct 673; 145 L Ed 2d 570 (2000), citing Brown v Texas, 443 US 47; 99 S Ct 2637; 61 L Ed 2d 357 (1979).
Thus, like each court that has heard the matter until now, I would hold that defendant was illegally seized without reasonable suspicion or probable cause. The officers retained defendant’s identification card and initiated a LEIN check without defendant’s permission and after having already resolved their initial stated concern. The officers did not identify, nor do the facts show, any circumstances that suggested that the officers had a reasonable, articulable suspicion based on objective observations that defendant had been, was, or was about to engage in criminal wrongdoing at that point. Shabaz, supra at 59. Moreover, I believe that the officers’ conduct and the circumstances surrounding the detention would have persuaded any reasonable person to conclude that he was not free to leave. As such, I would affirm the decision of the Court of Appeals.
KELLY, J., concurred with CAVANAGH, J.

 US Const, Am IV; Const 1963, art 1, § 11.

 Law Enforcement Information Network.

 The majority apparently does not contest that there was no need to detain defendant because it does not find that the officers had reasonable suspicion to detain defendant at the time of the LEIN check. See ante at 34. And at the suppression hearing, Officer Spickard offered no rationale whatsoever that would indicate that he or his partner had a reasonable suspicion that any other sort of criminal activity was afoot.

 The majority claims that I “fail[] to note” changes in defendant’s behavior that occurred after the officers began the LEIN check, and that I thus erroneously fail to properly assess the facts supporting reasonable suspicion. Ante at 29 n 1. Apparently, the majority misses my point that at the time those subsequent behaviors occurred, defendant had already been seized. Thus, not only do those behaviors add nothing to the analysis whether the officers had reasonable suspicion at the time of the seizure, but considering subsequent behavior violates the United States Supreme Court’s clear prohibition on using after-acquired suspicions in a totality of the circumstances analysis. See Florida v JL, supra at 271-272.

 In fact, in this case, the wait for the LEIN check results was unusually long because the police dispatcher was busy.

 MCL 750.552, in relevant part, defines trespass as follows:
Any person who shall wilfully enter, upon the lands or premises of another without lawful authority, after having been forbidden so to do by the owner or occupant, agent or servant of the owner or occupant, or any person being upon the land or premises of another, upon being notified to depart therefrom by the owner or occupant, the agent or servant of either, who without lawful authority neglects or refuses to depart therefrom, shall be guilty of a misdemeanor....
Of course, a LEIN check would not assist the officers in determining whether the putative occupant had previously asked defendant to leave, and the officers had not seen the putative occupant ask defendant to leave. Thus, any alleged suspicion of trespass was unrelated to the LEIN check and the subsequent detention.

 The officers would find out later that defendant was there visiting his two daughters, who did live in the complex. While that fact has no direct bearing on this analysis, Officer Spickard claimed that he continued speaking with defendant because he suspected him of trespassing. But the fact that the officers did not elicit this information from defendant, which could have been obtained by asking the simple question, “Why are you here?”, but instead chose to run a LEIN check, which would not answer the question, supports defendant’s theory that the officers were acting on inchoate suspicions unrelated to trespass.

 This particular situation differs from those in which our courts have considered LEIN checks run in the course of lawful vehicle stops. See, e.g., People v Davis, 250 Mich App 357,367-368; 649 NW2d 94 (2002), and People v Walker, 58 Mich App 519, 523-524; 228 NW2d 443 (1975). In those cases, the officers already had reasonable suspicion and conducted LEIN checks in furtherance of their initial stop. Here, the officers conducted the LEIN check without first having reasonable suspicion to make the detention.

 The majority enigmatically states that while I “concluded that no reasonable person would walk away under the circumstances, this view was obviously not shared by the defendant, who walked away ‘under those circumstances.’ ” Ante at 29 n 2. Not only am I befuddled at what this lends to the majority’s analysis, it seems to assume that I state that defendant was a reasonable person. I do not. Moreover, the test to determine when a person was seized does not consider the defendant’s subjective feelings or actions; rather, it asks whether a reasonable person in defendant’s position would feel free to leave. Hodari D, supra at 627-628.

 The majority misreads my analysis by concluding that I find the officers’ subjective beliefs, without more, material. But what I conclude is that the officers’ show of authority, actions, words, and conduct were objective manifestations of their clearly held subjective belief that defendant was not free to leave. Such a conclusion is perfectly within the confines of the rules governing the consideration of subjective beliefs. See Mendenhall, supra at 555 n 6.