# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALEXANDER WASIL FEDOTOTSZKIN,

Defendant-Appellant.

UNPUBLISHED
January 10, 2017

No. 329927
Washtenaw Circuit Court
LC No. 14-000525-FH

Before: WILDER, P.J., and BORRELLO and GLEICHER, JJ.

PER CURIAM.

Late one night, an officer found the intoxicated defendant sleeping in his car, slumped over the wheel, with the engine running. A jury convicted defendant of operating a motor vehicle while intoxicated, MCL 257.625, based on this discovery. Defendant challenges the legality of the officer's "investigatory stop" and of his subsequent arrest, as well as the sufficiency of the evidence supporting his conviction. We affirm.

## I. BACKGROUND

In the early morning hours of October 23, 2013, Pittsfield Township police officer Matthew Kessler was out on patrol. He pulled into the parking lot of a closed restaurant where he often parked to conduct surveillance of a nearby motel. That night, another vehicle was in the lot. Officer Kessler noticed a car parked askew across the base of two spots, partially hanging into the area designed for vehicular travel. Officer Kessler parked his patrol vehicle and exited. He then heard the other vehicle's engine running. Officer Kessler approached and observed defendant in the driver's seat, unconscious, slumped over the wheel.

Officer Kessler knocked repeatedly on the window in an attempt to rouse defendant. Defendant woke several times, looked at Officer Kessler, and then returned to his slumber. At one point, defendant placed both hands on the steering wheel as if to drive away. Defendant's effort was stymied as he failed to take the vehicle out of park. When Officer Kessler ordered defendant to unlock the vehicle's doors, defendant instead hit the trunk release button. Eventually, defendant succeeded in unlocking the doors. Officer Kessler reached in, turned off the car, pulled the keys out of the ignition, and placed them on the vehicle's roof.

Defendant complied with Officer Kessler's order to exit the vehicle. The officer detected a strong odor of alcohol. Defendant was stumbling and had to lean on his vehicle to maintain his

-1-

balance. Moreover, defendant's speech was slurred and his eyes were red and bloodshot. He could not answer basic questions. Given defendant's uncooperative behavior, Officer Kessler decided to forego field sobriety tests. He transported defendant to the police station and after defendant refused a preliminary breathalyzer, Officer Kessler secured a warrant to test defendant's blood and urine. These tests revealed that defendant's blood alcohol level was 0.24, well above the legal limit of 0.08. See MCL 257.625(1)(b).

## II. INVESTIGATIVE STOP

Defendant first contends that the trial court should have suppressed the evidence secured during his stop as Officer Kessler's actions constituted an unreasonable seizure under the Fourth Amendment. "We review for clear error a trial court's findings of fact in a suppression hearing," but "review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

For Fourth Amendment purposes, we presume that warrantless searches and seizures are unreasonable unless a " 'specifically established and well delineated exception[]' " exists. *Coolidge v New Hampshire*, 403 US 443, 454-455; 91 S Ct 2022; 29 L Ed 2d 564 (1971), quoting *Katz v United States*, 389 US 347, 357; 88 S Ct 507; 19 L Ed 2d 576 (1967). However, not every interaction with law enforcement constitutes a search or seizure triggering the Fourth Amendment. An officer may approach a citizen "on the street or in other public places" and ask the citizen to voluntarily answer questions without violating the Fourth Amendment. *United States v Drayton*, 536 US 194, 200-201; 122 S Ct 2105; 153 L Ed 2d 242 (2002). As long as a stop "involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through noncoercive questioning," then it "is not a seizure within the meaning of the Fourth Amendment." *People v Bloxson*, 205 Mich App 236, 241; 517 NW2d 563 (1994) (quotation marks and citation omitted).

"[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v Bostick*, 501 US 429, 439; 111 S Ct 2382, 2389; 115 L Ed 2d 389 (1991). Officer Kessler's act of approaching defendant's vehicle and knocking on the window did not amount to a seizure. In this regard we find instructive *People v Walker*, 58 Mich App 519; 228 NW2d 443 (1975). Similar to the current case, the officers in *Walker* "observed the defendant slumped over the wheel of his car, which was parked with the motor running in a parking lot adjacent to a motel. The officers pulled into the lot, approached the vehicle and aroused the defendant, who appeared to be either unconscious or asleep." *Id*. at 521. In *Walker*, 58 Mich App at 522-523, this Court held:

> [N]ot every encounter between a law enforcement official and a private citizen is a "stop" for Fourth Amendment purposes. The law recognizes an important factual/constitutional distinction drawn between arrests based on probable cause and street investigations which may ultimately lead to arrests. See *People v Rivers*, 42 Mich App 561, 567; 202 NW2d 498 (1972).

With this distinction in mind we proceed to analyze the police activity in the instant case. After observing a human form slumped over the steering wheel of an automobile (which was parked in a hotel parking lot at 4:30 in the morning with the motor running) the officers' first step was to approach the vehicle and arouse the defendant. Next they asked him what he was doing there and for his operator's license. When, in response to police questioning, the defendant identified a white substance around his nostrils as cocaine, the officers took the defendant's driver's license and conducted a warrant check through the LEIN system.

The action taken by the police officers here is, for purposes of the Fourth Amendment, comparable to the momentary police-community contact approved in *People v Rivers* . . . . Quoting from *United States v Lee*, 271 A2d 566 (DC, 1970), the Court said:

> " 'Revealed here is the kind of momentary contact which is and must be recognized as necessary to a sound police-community relationship and its commensurate effective law enforcement.' " *Rivers*, [42 Mich App at] 568-569.

Our Supreme Court has also weighed in on this issue, holding that "merely approaching [a] vehicle in a public place and asking [the occupants] if they [are] willing to answer some questions" is not a seizure. *People v Taylor*, 454 Mich 580, 590; 564 NW2d 24 (1997), overruled on other grounds *People v Kazmierczak*, 461 Mich 411; 605 NW2d 667 (2000).

Officer Kessler approached defendant's vehicle after "observing a human form slumped over the steering wheel" parked next to a closed restaurant in the wee hours of the morning with the motor running. This was not a seizure, or even an investigatory stop like in *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). See *People v Daniels*, 160 Mich App 614, 619; 408 NW2d 398 (1987) ("[A] police approach for questioning on the street amounts to a consensual encounter, not a *Terry* stop, unless there exist intimidating circumstances leading the person to reasonably believe he was not free to leave. . . ."). There is no record indication that Officer Kessler parked his patrol vehicle in a manner that blocked defendant's path or told defendant to stay put. This was at most "momentary police-community contact" during which an officer sought voluntary cooperation from a citizen.

A seizure did occur, however, when Officer Kessler reached into defendant's vehicle and removed his keys and then ordered him to exit. Officer Kessler's actions prevented defendant from leaving, transforming the encounter into a *Terry* stop. As described by the United States Court of Appeals for the Sixth Circuit in *United States v Carr*, 674 F3d 570, 574 (CA 6, 2012):

> When the officers asked Carr to exit the vehicle, the encounter transformed from voluntary to compulsory. "Once a consensual encounter escalates to the point where the individual is 'seized,' the police officer must have a reasonable suspicion of criminal activity to justify a *Terry* stop, or probable cause to justify an arrest, in order for the seizure to comply with the Fourth Amendment." [Citation omitted.]

The current stop was not unlawful. Officer Kessler had reasonable suspicion that defendant had operated a vehicle while intoxicated at the time he ordered defendant from the car. When the officer approached, defendant's engine was running, he was behind the wheel, and the car was parked erratically. Defendant's state of unconsciousness and then confusion and inability to follow commands suggested that he was intoxicated. Accordingly, Officer Kessler reasonably suspected that defendant had driven himself while intoxicated to the restaurant parking lot, where he haphazardly parked and took a nap. The trial court therefore had no ground to suppress the evidence gathered during the stop.

### III. PROBABLE CAUSE TO ARREST/SUFFICIENCY OF THE EVIDENCE

Defendant next argues that Officer Kessler lacked probable cause to arrest him because the officer did not see defendant operating the vehicle. And as no one saw defendant operating the vehicle, defendant contends that his conviction is insupportable. Defendant failed to preserve his challenge that Officer Kessler lacked probable cause to make a warrantless arrest by raising this issue in his pretrial motion to suppress. Our review is therefore limited to plain error affecting defendant's substantial rights. *People v Green*, 260 Mich App 392, 396; 677 NW2d 363 (2004), overruled on other grounds *People v Antsey*, 476 Mich 436, 446-447; 719 NW2d 579 (2006).

"A police officer may make an arrest without a warrant if there is probable cause to believe that a felony was committed by the defendant, or probable cause to believe that the defendant committed a misdemeanor in the officer's presence." *People v Chapo*, 283 Mich App 360, 366-367; 770 NW2d 68 (2009). However, MCL 764.15(1)(d) permits warrantless arrests for certain misdemeanors occurring outside an officer's presence, specifically when "[t]he peace officer has reasonable cause to believe a misdemeanor punishable by imprisonment for more than 92 days . . . has been committed and reasonable cause to believe the person committed it." Reasonable or probable cause to arrest exists "where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996). "The standard is an objective one, applied without regard to the intent or motive of the police officer." *Chapo*, 283 Mich App at 367.

Officer Kessler arrested defendant for OWI under MCL 257.625, which proscribes operating a vehicle, even in a parking lot, while intoxicated, i.e. "under the influence of intoxicating liquor." MCL 257.625(1)(a). Subsection (9)(a) makes the offense a misdemeanor punishable by 93 days' incarceration. Therefore, pursuant to MCL 764.15(1)(d), "an officer does not have to observe a defendant operating a vehicle for the defendant to be arrested and prosecuted for [OWI]" in violation of MCL 257.625. *People v Stephen*, 262 Mich App 213, 219; 685 NW2d 309 (2004). The question then in considering the validity of defendant's arrest and conviction is whether Officer Kessler had sufficient facts within his knowledge to warrant the reasonable belief that defendant had operated his vehicle while intoxicated.

Officer Kessler clearly had probable cause. Defendant was behind the wheel of a running vehicle. The circumstances more than suggested that defendant had not become intoxicated at that location. The restaurant was closed and defendant's vehicle was haphazardly parked.

Moreover, Officer Kessler found no alcohol or empty containers in defendant's vehicle. This would lead a reasonably cautious officer to believe that defendant drove himself to the parking lot while already intoxicated.[1] Defendant's intoxication was also clear. Defendant was soundly asleep behind his steering wheel. Officer Kessler knocked on defendant's window for several minutes to wake him. Upon waking, defendant was confused and unable to open his car door. When defendant exited the vehicle, he could barely stand and did not know where he was. Officer Kessler detected the smell of alcohol and noticed that defendant's eyes were red and bloodshot and his speech was slurred. Based on the totality of the circumstances, Officer Kessler had probable cause to arrest defendant.

This same evidence, viewed in the light most favorable to the prosecutor, supports defendant's conviction beyond a reasonable doubt. Accordingly, defendant's challenge to the sufficiency of the evidence supporting his conviction must fail. See *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

We affirm.

/s/ Kurtis T. Wilder
/s/ Stephen L. Borrello
/s/ Elizabeth L. Gleicher

---

[1] A defendant operates a motor vehicle for purposes of the OWI statute when he or she "has put the vehicle in motion, or in a position posing a significant risk of causing a collision, . . . until the vehicle is returned to a position posing no such risk." *People v Wood*, 450 Mich 399, 404-405; 528 NW2d 351 (1995).